No. 16-41674

# In the United States Court of Appeals for the Fifth Circuit

ARCHER AND WHITE SALES, INC.,
PLAINTIFF-APPELLEE

*v.*

HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC, AND DENTAL IMAGING TECHNOLOGIES CORPORATION,
DEFENDANTS-APPELLANTS

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS (CIV. NO. 12-572) (THE HONORABLE RODNEY GILSTRAP, J.)*

**JOINT BRIEF OF APPELLANTS HENRY SCHEIN, INC., DANAHER CORP., INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC, AND DENTAL IMAGING TECHNOLOGIES CORP.**


JONATHAN B. PITT
LIAM J. MONTGOMERY
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

LAYNE E. KRUSE
NORTON ROSE FULBRIGHT US LLP
*1301 McKinney, Suite 5100*
*Houston, Texas 77010*
*(713) 651-5151*

BRETT C. GOVETT
NORTON ROSE FULBRIGHT US LLP
*2200 Ross Avenue, Suite 3600*
*Dallas, Texas 75201*
*(214) 855-8118*

*Attorneys for Appellants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, and Dental Imaging Technologies Corporation*

PAUL F. SCHUSTER
CYNTHIA KEELY TIMMS
LOCKE LORD LLP
*2200 Ross Avenue, Suite 2800*
*Dallas, Texas 75201*
*(214) 740-8000*

CHRISTOPHER ONDECK
ADRIAN FONTECILLA
STEPHEN CHUK
PROSKAUER ROSE LLP
*1001 Pennsylvania Avenue, N.W.*
*Washington, DC 20004*
*(202) 416-5865*

*Attorneys For Appellant Henry Schein, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

I, Jonathan B. Pitt, counsel for Appellants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation and a member of the Bar of this Court, certify that the following listed persons and entities, as described in Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case.

A. Parties and their affiliates:

| | |
|---|---|
| Defendants-Appellants: | Henry Schein, Inc.<br>Danaher Corporation<br>Instrumentarium Dental Inc.<br>Dental Equipment LLC<br>Kavo Dental Technologies, LLC<br>Dental Imaging Technologies Corp. |
| Plaintiff-Appellee: | Archer and White Sales, Inc. |

B. Attorneys:

| | |
|---|---|
| Defendants-Appellants: | Jonathan B. Pitt<br>Liam J. Montgomery<br>Steven R. Kuney<br>*Williams & Connolly LLP*<br>Layne E. Kruse<br>Brett C. Govett<br>*Norton Rose Fulbright US LLP*<br>Paul Schuster<br>Cynthia Keely Timms<br>*Locke Lord LLP* |

Christopher Ondeck
Adrian Fontecilla
Stephen Chuk
*Proskauer Rose LLP*

Plaintiff-Appellee: Kay Lynn Brumbaugh
Cameron Phair Pope
Jerry L. Beane
*Andrews Kurth Kenyon LLP*

*/s/ Jonathan B. Pitt*
JONATHAN B. PITT

*Counsel for Appellants Danaher Corp., Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully submit that oral argument would be useful to the disposition of this appeal because it presents important issues regarding Fifth Circuit law on arbitrability.

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

A. Factual Background. .......... 3

B. Procedural Background. .......... 6

SUMMARY OF ARGUMENT .......... 11

STANDARD OF REVIEW .......... 14

ARGUMENT .......... 15

I. THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED ARBITRABILITY TO THE ARBITRATOR. .......... 15

A. The Parties Delegated Arbitrability to the Arbitrator by Incorporating the AAA Rules. .......... 15

B. The Carve-Out for "Actions Seeking Injunctive Relief" Does Not Permit the Court To Decide Arbitrability for Itself. .......... 17

C. The Only Exception to the *Petrofac* Rule Is the "Wholly Groundless" Exception, Which Also Does Not Undermine the Arbitrator's Power To Decide Arbitrability Here. .......... 22

II. EVEN IF THE DISTRICT COURT HAD THE POWER TO DECIDE ARBITRABILITY, IT ERRED BY DENYING ARBITRATION. .......... 26

III. THE MAGISTRATE JUDGE CORRECTLY ESTOPPED ARCHER FROM DENYING ARBITRATION WITH THE NON-SIGNATORIES. .......... 32

CONCLUSION .......... 40

## TABLE OF AUTHORITIES

## CASES


Page

*Aggarao* v. *MOL Ship Mgmt. Co.*, 675 F.3d 355 (4th Cir. 2012) ................ 37

*Alford* v. *Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ................ 28

*Am. Bankers Ins. Group* v. *Long*, 453 F.3d 623 (4th Cir. 2006) ................ 35

*Amegy Bank Nat'l Ass'n* v. *Monarch Flight II, LLC*, 870 F. Supp. 2d 441 (S.D. Tex. 2012) ................ 28

*Artesia Springs, LLC* v. *DS Waters of Am., Inc.*, No. 14-ca-791, 2015 WL 12712643 (W.D. Tex. Jan. 13, 2015) ................ 33

*Arthur Andersen LLP* v. *Carlisle*, 556 U.S. 624 (2009) ................ 33, 34

*AT&T Techs., Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ................ 26, 28

*Barker* v. *Fox Den Acres, Inc. (In re Barker)*, 510 B.R. 771 (Bankr. W.D.N.C. 2014) ................ 33, 37

*Bitstamp Ltd.* v. *Ripple Labs Inc.*, No. 15-cv-1503, 2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) ................ 21

*Bollinger Shipyards Lockport LLC* v. *Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704 (E.D. La. Jan. 12, 2009) ................ 19, 21

*Brennan* v. *Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ................ 20, 21

*Brown* v. *Pac. Life Ins.*, 462 F.3d 384 (5th Cir. 2006) ................ 14, 37

*Cellairis Franchise, Inc.* v. *Duarte*, No. 2:15-cv-101, 2015 WL 11422299 (N.D. Ga. July 20, 2015) ................ 21

*City of Meridian* v. *Algernon Blair, Inc.*, 721 F.2d 525 (5th Cir. 1983) ................ 29

*Cooper* v. *WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534 (5th Cir. 2016) ................ 16, 17

*Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213 (1985) ................ 28

*DeVries* v. *Experian Info. Sols., Inc.*, No. 16-cv-2953, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .......... 21

*Douglas* v. *Regions Bank*, 757 F.3d 460 (5th Cir. 2014) .......... passim

*Erving* v. *Va. Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972) .......... 27

*First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938 (1995) .......... 15, 16, 26

*Glanville* v. *Dupar, Inc.*, 727 F. Supp. 2d 596 (S.D. Tex. 2010) .......... 31

*Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S. 444 (2003) (plurality opinion) .......... 25

*Grigson* v. *Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000) .......... passim

*Halliburton Energy Servs., Inc.* v. *BJ Servs. Co.*, No. 2:08-cv-475, 2010 WL 2991031 (E.D. Tex. July 28, 2010) .......... 17, 19

*Harvey* v. *Joyce*, 199 F.3d 790 (5th Cir. 2000) .......... 27, 28, 29, 38

*Hays* v. *HCA Holdings, Inc.*, 838 F.3d 605 (5th Cir. 2016) .......... 34

*Hendricks* v. *UBS Fin. Servs., Inc.*, 546 F. App'x 514 (5th Cir. 2013) (per curiam) .......... 18, 30

*Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) .......... 16

*Humphreys* v. *City of Ganado*, 467 F. App'x 252 (5th Cir. 2012) (per curiam) .......... 31

*ITT Educ. Servs., Inc.* v. *Arce*, 533 F.3d 342 (5th Cir. 2008) .......... 30

*J.J. Ryan & Sons, Inc.* v. *Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988) .......... 38

*James C. Greene Co.* v. *Great Am. E & S Ins.*, 321 F. Supp. 2d 717 (E.D.N.C. 2004) .......... 33

*Joslyn Mfg. Co.* v. *Koppers Co.*, 40 F.3d 750 (5th Cir. 1994) .......... 32

*Kemlon Prods. & Dev. Co.* v. *United States*, 638 F.2d 1315 (5th Cir. 1981) .......... 30

*Kubala* v. *Supreme Prod. Servs., Inc.*, 830 F.3d 199 (5th Cir. 2016) .......... passim

*Lawrence* v. *Comprehensive Bus. Servs.*, 833 F.2d 1159 (5th Cir. 1987)....................27

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1 (1983) ....................passim

*Oracle Am., Inc.* v. *Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) ....................passim

*Pennzoil Expl. & Prod. Co.* v. *Ramco Energy Ltd.*, 139 F.3d 1061 (5th Cir. 1998)....................27, 28, 31

*Petrofac, Inc.* v. *DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012)....................passim

*Remy Amerique, Inc.* v. *Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993) ....................27

*Rent-A-Center, W., Inc.* v. *Jackson*, 561 U.S. 63 (2010)....................16

*Reyna* v. *Int'l Bank of Commerce*, 839 F.3d 373 (5th Cir. 2016) ......1, 14, 16

*Sauer-Getriebe KG* v. *White Hydraulics, Inc.*, 715 F.2d 348 (7th Cir. 1983)....................27

*Sherer* v. *Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir. 2008) ....................34

*Sys. Research & Applications Corp.* v. *Rohde & Schwarz Fed. Sys., Inc.*, 840 F. Supp. 2d 935 (E.D. Va. 2012)....................21

*WMT Invs., LLC* v. *Visionwall Corp.*, 09 CIV. 10509, 2010 WL 2720607 (S.D.N.Y. June 28, 2010) ....................27

## STATUTES AND REGULATIONS

9 U.S.C. § 16 ....................1

15 U.S.C. § 1 ....................4

15 U.S.C. § 15 ....................1

15 U.S.C. § 26 ....................1

28 U.S.C. § 1331 ....................1

28 U.S.C. § 1337 ....................1

28 U.S.C. § 2106 ....................32

Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code §§ 15.01–15.52 .......... 4

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. §§ 15 and 26. The district court entered an order on December 7, 2016 vacating the magistrate judge's order that compelled arbitration and stayed proceedings, and setting trial for February 5, 2018. *See* ROA.645–662. Appellants timely filed notices of appeal on December 13 and 14, 2016. *See* ROA.663–703. The jurisdiction of this Court rests on 9 U.S.C. § 16. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376 n.3 (5th Cir. 2016) ("Under the FAA, a party may seek interlocutory review of an order denying an application to compel arbitration." (alterations and internal quotation marks omitted)).

## STATEMENT OF THE ISSUES

1. The Fifth Circuit mandates that the incorporation of the American Arbitration Association (AAA) rules into an arbitration clause clearly and unmistakably delegates the determination of arbitrability to the arbitrator. The arbitration clauses here incorporate the AAA rules. Did the district court err by deciding arbitrability itself, notwithstanding the parties' clear and unmistakable delegation?

2. The arbitration clauses at issue here include an exception for actions seeking injunctive relief. This action is for monetary damages and includes an unsupported demand for unspecified injunctive relief. Even if

the district court correctly reached the arbitrability issue, did it err by resolving any doubts ***against*** arbitration by refusing to refer Appellee's case to arbitration and granting Appellee a jury trial on its damages claim notwithstanding the parties' broad arbitration agreement?

3. Appellee alleges concerted and interdependent antitrust misconduct among all Appellants—signatory and non-signatory alike—that allegedly resulted in Appellee being terminated from the distribution agreements containing the relevant arbitration clauses. Should Appellee therefore be equitably estopped from denying arbitration as to the non-signatory Appellants?

## STATEMENT OF THE CASE

The parties executed a valid arbitration agreement that (1) broadly covered (subject to certain exclusions) all disputes "arising under or related to" the agreement that defined the distributorship rights that Appellee claims were wrongfully restricted or terminated; and (2) clearly and unmistakably delegated arbitrability to the arbitrator. *See* ROA.501–506. The magistrate judge—to whom the case was assigned for all pretrial purposes—granted Appellants' motions to compel arbitration by applying the law in this Circuit requiring trial courts to honor the parties' delegation of arbitrability to an arbitrator, consistent with the Supreme Court's

instruction that doubts regarding arbitrability must be resolved in favor of arbitration. ROA.439–443.

More than three and a half years later, the district judge, on a motion for reconsideration, reversed the magistrate judge and ordered the parties to try the case before a jury on an expedited timetable. ROA.645–662. It did so because, in its own view, the exception for "actions seeking injunctive relief" meant that Appellee's inclusion of a perfunctory injunctive-relief request in a complaint for money damages overrode the entire arbitration agreement (including the delegation clause) and entitled Appellee to a jury trial on its damages claim. ROA.649–656. The district judge held that any interpretation of the agreement contrary to its own must be "wholly groundless," even though the magistrate judge had expressly held that there is a plausible interpretation of the agreement resulting in arbitrability—demonstrating that an interpretation contrary to the district judge's could not possibly be "wholly groundless." ROA.658–661.

### A. Factual Background.

Appellants Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation (together, the "Manufacturer Appellants") manufacture and

distribute dental equipment. ROA.19–20 (Compl. ¶¶ 10–14).[1] At the time it filed its Complaint, Appellee Archer & White Sales, Inc. ("Archer") distributed, sold, and serviced dental equipment on behalf of many different companies, including certain of the Manufacturer Appellants. ROA.18 (Compl. ¶ 9). Archer alleges that Appellant Henry Schein, Inc. and another competing distributor (Burkhart Dental Supply, which Archer calls "Company X" in its Complaint) conspired with certain of the Manufacturer Appellants to cut off and restrict Archer's sales territories under a 2007 distribution agreement and to boycott Archer. ROA.16–17 (Compl. ¶¶ 1–2); ROA.24–30 (Compl. ¶¶ 32–45).

Archer contends that this alleged conspiracy violates Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code §§ 15.01–15.52. ROA.18 (Compl. ¶ 4). Archer's Complaint seeks "tens of millions of dollars" in damages. ROA.16–17 (Compl. ¶ 1). It also includes a two-sentence request for unspecified injunctive relief but provides no support for that request. *See* ROA.35–36 (Compl. ¶¶ 61, 68) ("Plaintiff also seeks injunctive relief. The violations set forth above are continuing and will continue unless injunctive relief is granted."). In the more than four years since Archer filed its Complaint and

---

[1] Appellant Danaher Corporation is the corporate parent of each of the Manufacturer Appellants. ROA.19–20 (Compl. ¶¶ 10–14).

the more than eight years since Archer alleges it suffered injury in the form of the restriction or termination of its dealership rights, it has never sought any form of injunctive relief. *See generally* ROA.1–15 (docket sheet).

As Archer states in its Complaint, "Archer Dental's authorized distribution territory in its dealer agreements with [the Manufacturer Appellants] allowed it to sell equipment in Texas and parts of Oklahoma and Northwest Arkansas." ROA.22–23 (Compl. ¶ 23). One such dealer agreement was with Pelton & Crane, a division of Appellant Dental Equipment LLC. *See* ROA.501–506. The Pelton & Crane Dealer Agreement appointed Archer Dental an "authorized dealer for sale" within certain defined territories. *See* ROA.501 (Agreement § 1). The Agreement also defined how the parties were to resolve any disputes:

> This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be Charlotte, North Carolina.

ROA.504 (Agreement § 12.8). Pursuant to dealer agreements containing substantially identical arbitration clauses, Archer also distributed equipment for two other brands of the Manufacturer Appellants, Marus and DCI

Equipment, both of which also were divisions of Dental Equipment LLC. *See* ROA.510 (Marus Agreement § 12.8); ROA.522 (DCI Equipment Agreement § 12.8).

### B. Procedural Background.

Archer filed its Complaint on August 31, 2012, more than four years after Pelton & Crane, Marus, and DCI Equipment allegedly restricted Archer's sales territory. ROA.16–37. On September 10, 2012, the district court referred the case to the magistrate judge. ROA.6 (Dkt. No. 5).

Relying on the Dealer Agreements, Appellants moved to compel arbitration on September 26, 2012. ROA.68–156; ROA.166–181. Appellants urged the magistrate judge to compel arbitration because Archer had broadly agreed to resolve all disputes "arising under or related to" the Dealer Agreements by arbitration—including disputes regarding arbitrability itself, by virtue of the parties' incorporation of the AAA rules—and because Archer was equitably estopped from denying its obligation to arbitrate with the non-signatory Appellants. *See generally* ROA.68–156; ROA.166–181; ROA.248–358; ROA.380–392.

Relying on its perfunctory request for injunctive relief, Archer argued, in part, that the carve-out from the arbitration clause for "actions seeking injunctive relief" both (1) deprived the arbitrator of the power to decide arbitrability and (2) rendered the entire dispute between the parties non-

arbitrable. *See, e.g.*, ROA.195–247. Archer also denied that equitable estoppel should apply. *Id.* The parties fully briefed the arbitration issue by November 5, 2012. ROA.9.

On February 27, 2013, the magistrate judge held a lengthy hearing on the motions to compel arbitration. ROA.882–943. On May 28, 2013, the magistrate judge ruled in favor of Appellants, compelling arbitration and staying the litigation. ROA.439–443. The magistrate judge began by finding it had "no hesitation in concluding that this lawsuit is a dispute 'related' to the distributor agreement." ROA.440. Presaging this Court's subsequent holding in *Douglas v. Regions Bank*, 757 F.3d 460, 463–64 (5th Cir. 2014), that a court may only override a clause delegating arbitrability to the arbitrator for a "wholly groundless" claim of arbitrability,[2] the magistrate judge then held that "there is in this case a plausible construction calling for arbitration." ROA.441. It so held by finding that on "***the most superficial level***, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that relief," but the Complaint "does not seek *only* injunctive relief, and the Court is persuaded that damages (described in Paragraph 1 of the

---

[2] In *Agere Systems, Inc. v. Samsung Electronics Co.*, this Court had adverted to the Federal Circuit's "wholly groundless" test but did not go so far as to adopt that test. 560 F.3d 337, 339–40 (5th Cir. 2009).

Complaint as 'in the tens of millions of dollars') are the predominant relief sought." ROA.440–441 (first emphasis added).

The magistrate judge then held that, notwithstanding Archer's request for injunctive relief, the parties' "incorporation of the rules of the AAA provides the answer" to whether the parties delegated arbitrability to the arbitrator. ROA.441. The magistrate judge relied on *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012), which holds that the parties' incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties intended the arbitrator, and not the court, to resolve arbitrability. ROA.441 ("Thus, the question of whether the exception for actions seeking injunctive relief should be limited to actions for an injunction in aid of arbitration or to enforce an arbitrator's award, should properly be left for the arbitrator to decide.").

The magistrate judge concluded by holding that Archer should be estopped from denying arbitration with the non-signatory defendants. ROA.441–442. Applying the standard set forth in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), he held both that Archer's claims against the non-signatory defendants depended on the Dealer Agreements and that Archer alleged "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* (internal quotation marks omitted).

Archer moved the district court to reconsider the magistrate judge's order compelling arbitration on June 10, 2013. ROA.444–465. Briefing on that motion was fully complete by July 3, 2013. ROA.11–12. During the ten months between the filing of its Complaint and the completion of this briefing, Archer never sought any form of injunctive relief, preliminary or otherwise. ROA.5–12.

For the next three and a half years, nothing happened in the litigation. ROA.12. The district court did not rule on Archer's motion to reconsider. *Id.* Archer did not initiate arbitration, even for the limited purpose of having the arbitrator decide arbitrability. Archer did not file any request for a ruling from the district court in light of the passage of time. *Id.* And Archer still did not move for any form of injunctive relief, preliminary or otherwise. *Id.*

On October 28, 2016, the district court ordered the parties to appear on November 9, 2016 for a hearing on Archer's motion for reconsideration. ROA.626 (district court order); ROA.944–976 (hearing transcript). On December 7, 2016, the district court vacated the magistrate judge's order and denied Appellants' motions to compel arbitration. ROA.645–662.

The district court began its analysis by itself deciding the "Scope of the Arbitration Clause." ROA.651–656. The court held that the "ultimate question turns on the [arbitration] clause's express exclusion, which excludes from arbitration 'actions seeking injunctive relief.'" ROA.652–653. Based on

this exception, the district court decided that Archer's entire Complaint seeking "tens of millions of dollars" of damages, ROA.17–18, was subject to a jury trial, ROA.656. Notwithstanding the magistrate judge's express ruling that "there ***is*** in this case a plausible construction [of the arbitration clause] calling for arbitration," ROA.441 (emphasis added), the district court held that "there is, in this case, a 'positive assurance' that ***no*** reasonable interpretation of the arbitration clause would force this action into arbitration," ROA.656 (emphasis added).

Only after the district court had already decided arbitrability of the entire case did it then proceed to address "The Question of Arbitrability." ROA.656–661. Because, in the district court's view, "the present action falls squarely within the terms of an express carve-out," ROA.657–658, the court exempted this case from this Court's holding in *Petrofac*, ROA.661 ("[T]here is no express delegation of arbitrability, but simply the adoption of the AAA rules for disputes not excluded from arbitration."). Thus, the district judge held—notwithstanding the law in this Circuit holding that where the parties adopt the AAA rules, the arbitrator, rather than the court, must decide arbitrability—that the clause delegating arbitrability to the arbitrator only applied to disputes that, in the court's view, fall within the scope of the arbitration clause.

By the time the district court addressed the magistrate judge's ruling, this Court had adopted the "wholly groundless" standard in *Douglas*, holding that a court may override a valid delegation of arbitrability only when a claim has "nothing to do with" the contract containing the arbitration clause. 757 F.3d at 464. Relying on that case, the district court ruled that any interpretation permitting arbitration of Archer's damages claims (such as, for example, the magistrate judge's interpretation) must be "wholly groundless." ROA.658–661.

Finally, in light of its decision on arbitrability, the district court declined to reach the magistrate judge's ruling on equitable estoppel. ROA.661.

This interlocutory appeal immediately followed. ROA.663–703.[3]

## SUMMARY OF ARGUMENT

By adopting the AAA rules, the parties clearly and unmistakably manifested their intent that the arbitrator—not the court—must decide the arbitrability of all of Archer's claims. This is precisely what the magistrate judge held in 2013, finding that there was a plausible reading of the contract

[3] On December 14, 2016, Appellants jointly moved the district court to stay the litigation pending appeal, ROA.704–713, and on February 1, 2017 moved this Court for a stay pending appeal, Appellants' Joint Mot. for Stay (Feb. 1, 2017). On February 24, 2017, this Court carried the stay motion with the case and ordered expedited briefing. Order on Mot. for Stay (Feb. 24, 2017).

that permitted arbitration and holding that, therefore, it was for the arbitrator to determine arbitrability in these circumstances. But more than three years later, the district court reversed that decision and determined arbitrability itself. Only after it had concluded that a two-sentence claim for unspecified injunctive relief entitled Archer to a jury trial on its damages claim did the district court then address whether the parties had delegated arbitrability to the arbitrator. In that regard, it held that the injunctive-relief claim overrode the parties' clear and unmistakable delegation and that any decision to the contrary (including the magistrate judge's) must be "wholly groundless." The contrast between the magistrate judge's decision and the district court's decision itself demonstrates that an interpretation of the clause in favor of arbitration is not "wholly groundless." By finding to the contrary, the district court resolved any doubts ***against*** arbitration, which violated the Supreme Court's repeated admonition that courts must do the opposite.

The district court should not have overridden the parties' delegation of arbitrability by itself deciding whether this case is arbitrable. But even if it had been permitted to decide arbitrability itself, its decision was incorrect because it rested upon an impermissible interpretation of the arbitration clause. Finally, the magistrate judge correctly held that Archer should be estopped from denying arbitration as to the non-signatory Appellants.

A. This Court's precedent instructs that by incorporating the AAA rules in an arbitration clause, the parties clearly and unmistakably indicate their intent that the arbitrator will decide all issues of arbitrability. This is true even when the arbitration clause in question carves out certain types of claims from arbitration: In such cases, it is the arbitrator who decides whether or not the plaintiff's claims fit the carve-out provision.

Unless the claims at issue have nothing to do with the contract containing the arbitration clause—rendering the claim of arbitrability "wholly groundless"—the court must enforce the parties' intent that the arbitrator decide arbitrability. Because Archer's claims arise out of the Dealer Agreements containing the arbitration clause, the argument in favor of arbitrability is not "wholly groundless."

B. In the alternative, even if the district court properly held it had the power to decide arbitrability, it erred by resolving any doubts against arbitration by denying arbitration as to all of Archer's claims, including its damages claims. The correct reading of the contract is that the parties reserved for the court (1) preliminary injunctive relief in aid of arbitration and (2) permanent injunctive relief to enforce an arbitration award. Otherwise, claims for damages like Archer's must be heard by an arbitrator, not a jury. In addition, as the magistrate judge correctly found, Archer alleged its claim for injunctive relief (its only basis for invoking the carve-out

from arbitration) on the "most superficial" level, and its damages claims predominate. And even were there any doubt, the Supreme Court requires that all doubts be resolved in favor of arbitrability.

C. Finally, in the interest of efficiency and to give effect to the Federal Arbitration Act's policy in favor of summary and speedy disposition of motions to enforce arbitration clauses, the Court should affirm the magistrate judge's ruling—which the district judge declined to reach—that Archer is estopped from denying arbitration with the non-signatory Appellants. Archer's claims against all of the Appellants derive directly from and depend on the termination of Archer's sales territory under the Dealer Agreements containing the arbitration clauses. And those same claims allege concerted misconduct by all of the Appellants, signatory and non-signatory alike, in the form of a single alleged overarching conspiracy among the Appellants.

In sum, the district court erred by deciding arbitrability for itself. But even if it properly could decide arbitrability, it erred by interpreting the clause as it did. It should have compelled all parties to arbitration.

## STANDARD OF REVIEW

This Court reviews a decision denying a motion to compel arbitration *de novo*. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376 (5th Cir. 2016). A

decision compelling arbitration on the basis of equitable estoppel is reviewed for abuse of discretion. *Brown v. Pac. Life Ins.*, 462 F.3d 384, 398 (5th Cir. 2006); *Grigson*, 210 F.3d at 528.

## ARGUMENT

## I. THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED ARBITRABILITY TO THE ARBITRATOR.

By incorporating the AAA rules into their arbitration clause, the parties clearly stated their intent that the arbitrator must resolve *all* questions of arbitrability. The district court therefore erred by making the arbitrability decision itself, before even reaching the question of ***who*** must decide that issue.

### A. The Parties Delegated Arbitrability to the Arbitrator by Incorporating the AAA Rules.

Enforcement of an arbitration clause generally involves two questions: (1) contract formation, or "whether the parties entered into any arbitration agreement at all,"[4] and (2) whether the particular claim before the court is arbitrable. *Kubala*, 830 F.3d at 201 (emphasis omitted). But when the agreement delegates the power to decide arbitrability to the arbitrator, "the analysis changes" by virtue of this third question: "'Who should have the primary power to decide whether the claim is arbitrable'"? *Id.* at 201–02

[4] Archer does not dispute the validity of the Dealer Agreements containing the arbitration clauses at issue.

(emphasis omitted); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

As with any question regarding arbitration, "who" is to decide arbitrability turns on the parties' intent as expressed in their agreement. *First Options*, 514 U.S. at 943; *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016). The parties may delegate arbitrability to the arbitrator by "'clear[ly] and unmistakab[ly]'" expressing their intent to do so. *First Options*, 514 U.S. at 944–45; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Petrofac*, 687 F.3d at 675. When the parties have expressed such intent, "the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202; *Reyna*, 839 F.3d at 378 (same); *see also Kubala*, 830 F.3d at 203 ("[W]e must refer the claim to arbitration absent some exceptional circumstances.").

Parties can delegate arbitrability through an express delegation clause, that is, "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also Reyna*, 839 F.3d at 378. But the Fifth Circuit—along with every other circuit to consider the issue, *see, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013) (collecting cases)—has held that incorporating arbitration rules that delegate arbitrability to the arbitrator, like the AAA rules, indicates equally clearly and unmistakably

that the parties intend the arbitrator, and not the court, to resolve questions of arbitrability. *Petrofac*, 687 F.3d at 675 (adoption of AAA rules constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Cooper*, 832 F.3d at 546 (incorporation of JAMS rules clearly and unmistakably delegates arbitrability); *Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08-cv-475, 2010 WL 2991031, at *3 (E.D. Tex. July 28, 2010). This is because the applicable AAA rule, Rule 7(a), mandates that the "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, ***scope*** or validity of the arbitration agreement." ROA.118 (emphasis added).

The parties expressly incorporated these rules into the Dealer Agreements—including Rule 7(a)'s delegation to the arbitrator to decide the "scope" of this arbitration clause. ROA.504; ROA.510; ROA.522. By doing so, they clearly and unmistakably indicated their intent that the arbitrator, and not the district court, must determine the arbitrability of these disputes. This should have ended the district court's analysis, and the case should have been sent to arbitration.

### B. The Carve-Out for "Actions Seeking Injunctive Relief" Does Not Permit the Court To Decide Arbitrability for Itself.

Notwithstanding the Fifth Circuit's clear guidance on the effect of incorporating the AAA rules, the district court decided arbitrability itself by relying entirely on the carve-out provision in the arbitration clause for

"actions seeking injunctive relief." ROA.7–12. According to the district court, Archer's boilerplate request for injunctive relief—which Archer has never advanced in any way during the four-and-a-half-year pendency of this action—was enough both (1) to grant the district court the power to decide arbitrability and then (2) to render the entire dispute—including Archer's demand for damages "in the tens of millions of dollars"—triable to a jury. *Id.* This holding contravened Fifth Circuit case law, as well as case law from other circuits.

In *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, this Court addressed a dispute in which the relevant arbitration clause both (1) incorporated the AAA rules and (2) contained a carve-out stating that "'nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law . . . .'" 748 F.3d 249, 256 (5th Cir. 2014). Notwithstanding that the plaintiffs' complaint "requested damages and injunctive relief," *id.*, the Court applied *Petrofac* to hold that "whether the Plaintiffs' claims [including its claims for injunctive relief] are subject to arbitration must be decided in the first instance by the arbitrator, not a court," *id.* at 262–63; *see also Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 519–21 (5th Cir. 2013) (per curiam) (applying *Petrofac* to permit arbitrator to decide scope of arbitration, notwithstanding carve-out regarding claims for injunctive relief).

The district court's holding that this arbitration clause was not subject to the *Petrofac* rule because the "arbitration clause in this case is unique," ROA.653, cannot be squared with this Court's jurisprudence. *Crawford*, like this case, involved an arbitration clause that incorporated the AAA rules and gave either party the absolute right to seek injunctive relief in a court. In such instances, the arbitrator must decide the arbitrability of all claims—even actions for, in part, injunctive relief subject to a clause that gives a party the right to obtain such relief from a court of law. *See also Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704, at *6 (E.D. La. Jan. 12, 2009) ("That the arbitration clause specifies the types of disputes that are arbitrable does not compel the conclusion that the parties did not intend for the arbitrator to decide whether a particular dispute falls within the ambit of the disputes covered by the clause."); *cf. Halliburton*, 2010 WL 2991031, at *3 (citing *Bollinger* with approval).

Similarly, Ninth Circuit case law establishes that "carve-outs" from arbitration clauses do not undermine otherwise valid delegation clauses. In *Oracle America, Inc. v. Myriad Group A.G.*, the Ninth Circuit addressed an arbitration clause that incorporated the rules of the United Nations Commission on International Trade Law (UNCITRAL) and carved out "any dispute" related to intellectual property rights, over which the parties agreed

that the court's jurisdiction "shall be exclusive." 724 F.3d at 1072, 1075. The court held that, as with the AAA rules, the incorporation of the UNCITRAL rules delegated arbitrability to the arbitrator. *Id.* at 1074–75. The court then also rejected Oracle's argument that because the case involved an intellectual-property dispute, the court had to decide arbitrability:

> Oracle's argument conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability. The decision that a claim relates to intellectual property rights or compliance with the TCK License constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules.

*Id.* at 1076. And the Ninth Circuit criticized precisely the reasoning in which the district court engaged here: "[W]hen a tribunal decides that a claim falls within the scope of a carve-out provision, it necessarily decides arbitrability." *Id.*; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) (despite carve-out for "'any claim for equitable relief,'" arbitrator must decide arbitrability).

As a final example, the district court in *Microsoft Mobile, Inc. v. LG Chem America, Inc. (In re Lithium Ion Batteries Antitrust Litigation)* addressed a case directly on point. No. 15-cv-3443, 2016 WL 5791357 (N.D. Cal. Oct. 4, 2016). In that case, Microsoft brought an antitrust suit for both

damages and injunctive relief. *Id.* at *1. Defendant Sony moved to compel arbitration based on an arbitration clause that (1) incorporated the Arbitration Rules of the International Chamber of Commerce (which, like the AAA rules, delegate arbitrability to the arbitrator) and (2) carved out "'disputes . . . for injunctive relief.'" *Id.*

The court denied Microsoft's claim that the court could decide arbitrability in light of the injunctive-relief carve-out, holding that, "[w]here the parties agreed to arbitrate arbitrability, courts have even compelled arbitration of claims that were 'carved out' of the agreement." *Id.* at *5 (citation omitted). In so doing, that court—just like the magistrate judge here—further emphasized that the "gravamen of the complaint is not for injunctive relief, but rather for damages," and that "Microsoft did not rush into Court seeking emergency injunctive relief." *Id.*[5]

[5] Other district courts have reached the same conclusion as the courts in *Oracle*, *Brennan*, *Bollinger*, and *Microsoft*. *See, e.g.*, *Cellairis Franchise, Inc. v. Duarte*, No. 2:15-cv-101, 2015 WL 11422299, at *6 (N.D. Ga. July 20, 2015) ("The scope of a carve-out provision constitutes an arbitrability determination. Arbitrability determinations, without exception, are reserved for the arbitrator. Any decision to the contrary would represent a departure from the parties' clear and unmistakable intent to submit questions of arbitrability to the arbitrator." (citation omitted)); *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-cv-1503, 2015 WL 4692418, at *2, *4–5 (N.D. Cal. Aug. 6, 2015) (even in a case that sought only injunctive relief and specific performance, pursuant to a delegation clause, the arbitrator must decide whether a carve-out provision undermines arbitrability); *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-2953, 2017 WL 733096, at *9 (N.D. Cal. Feb. 24, 2017) ("[T]he determination of which, if any, of DeVries's claims fall

Whether or not an arbitration clause containing a valid delegation provision "carves out" certain claims, the delegation provision still mandates that the arbitrator—not the court—decide the arbitrability of the allegedly carved-out claims.

### C. The Only Exception to the *Petrofac* Rule Is the "Wholly Groundless" Exception, Which Also Does Not Undermine the Arbitrator's Power To Decide Arbitrability Here.

Because "carve-out" provisions are not an exception to the *Petrofac* rule, the only such exception is for "wholly groundless" claims of arbitrability. *See, e.g.*, *Douglas v. Regions Bank*, 757 F.3d 460, 463–64 (5th Cir. 2014); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 n.1 (5th Cir. 2016). The "wholly groundless" exception permits a court to decide arbitrability notwithstanding a delegation clause, but only when there is no "legitimate argument" in favor of arbitration because the claim at issue has "nothing to do with" the contract containing the arbitration clause. *Douglas*, 757 F.3d at 463–64 (internal quotation marks omitted). This stringent test is reserved for "exceptional" cases, and it is "not a license for the court to

---

within the carve-out is an issue that the parties clearly and unmistakably delegated to the arbitrator to decide in the first instance."); *Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, 840 F. Supp. 2d 935, 943 (E.D. Va. 2012) ("[D]elegation to the arbitrator of the power to determine arbitrability does not disappear merely because the arbitration clause in question is narrow.").

prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause." *Kubala*, 830 F.3d at 202 n.1.

*Douglas*, the leading Fifth Circuit case on the "wholly groundless" exception, is instructive. The complaint there, filed against Regions Bank, alleged negligence and conversion from a bank account owned by a third party, Douglas's former lawyer. *Douglas*, 757 F.3d at 461. Five years earlier, Douglas had opened her own account with Regions' predecessor, and she closed that account several years prior to the litigation with Regions. *Id.* Even though Douglas's claims involved her former lawyer's bank account and not her own, Regions moved to compel arbitration based on a signature card the plaintiff had signed regarding her then-closed account. *Id.* This Court held Regions' argument to be "wholly groundless" because Douglas's claims regarding negligence and conversion from her lawyer's account had "nothing to do with her checking account opened years earlier for only a brief time," and "Douglas did not intend to bind herself for life to gateway arbitration for any and all claims that ever might exist between her and Regions." *Id.* at 464.

In contrast, Archer's claims against Appellants directly relate to the Dealer Agreements that contain the relevant arbitration clauses. Archer alleges that Appellants conspired "to terminate and/or reduce the distribution territory of their price-cutting competing distributor Archer

Dental." ROA.16–17 (Compl. ¶ 1). It further alleges that the Manufacturer Appellants "prohibited Archer Dental from selling dental equipment in areas and to customers ***which the distribution agreements between Archer Dental and [the Manufacturer Appellants] permitted Archer Dental to sell*** . . . ." *Id.* (emphasis added); *see also* ROA.22–23 (Compl. ¶ 23) ("Archer Dental's authorized distribution territory in its dealer agreements with [the Manufacturer Appellants] allowed it to sell equipment in Texas and parts of Oklahoma and Northwest Arkansas."). Moreover, the wrong Archer alleges is that Schein, Burkhart ("Company X"), and the Manufacturer Appellants conspired to "boycott, terminate, and/or restrict Archer Dental's distribution territories," ROA.33–34 (Compl. ¶ 56), which territories the Complaint admits existed by dint of the Dealer Agreements. *See also* ROA.35 (Compl. ¶ 63). Thus, in contrast to *Douglas*, where the claims at issue had "nothing to do" with the arbitration agreement, Archer's claims depend directly on its Dealer Agreements with the Manufacturer Appellants.

This is the analysis required by the "wholly groundless" exception: whether or not Archer's claims had anything to do with the Dealer Agreements. But it is not the analysis in which the district court engaged. Rather, the district court rested its "wholly groundless" holding on the facts that (1) Archer alleged a cursory claim for injunctive relief in its Complaint, which otherwise demands damages, and (2) the arbitration provision

contained a carve-out for "actions seeking injunctive relief." ROA.658–661. This view of the "wholly groundless" exception would swallow the *Petrofac* rule, allowing a district court to arrogate to itself the role of defining the scope of any arbitration clause with a carve-out provision even where the parties have delegated arbitrability to the arbitrator—an analysis that is foreclosed by cases such as *Crawford* and *Oracle*. *See also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451–52 (2003) (plurality opinion) ("[T]he dispute about what the arbitration contract in each case means . . . is a dispute 'relating to this contract' . . . .'").

The simple fact that the magistrate judge found a plausible reading of the contract that permitted arbitration, ROA.441, renders untenable the district court's holding that any argument in favor of arbitrability must be "wholly groundless." Regardless, although the district court claimed to have applied the "wholly groundless" exception, in actuality it was repeating its erroneous decision on arbitrability. In other words, the district court used the "wholly groundless" exception in precisely the way the Fifth Circuit prohibits: as "a license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause." *Kubala*, 830 F.3d at 202 n.1.

* * * * * * * *

The parties' incorporation of the AAA rules delegated ***all*** questions of arbitrability to the arbitrator, even those purportedly related to the carve-out for injunctive relief. The arbitrability of this dispute that stems directly from the Dealer Agreements is in no way "exceptional" within the meaning of the "wholly groundless" test. Accordingly, this should end the Court's analysis. *Kubala*, 830 F.3d at 204 ("Thus, we do not opine on whether the agreement requires that the merits of Kubala's claim be arbitrated rather than tried in court. The only issue now is who answers that question. It is plainly the right and responsibility only of the arbitrator."). The arbitrator must decide arbitrability in the first instance. The district court should be reversed.

## II. EVEN IF THE DISTRICT COURT HAD THE POWER TO DECIDE ARBITRABILITY, IT ERRED BY DENYING ARBITRATION.

Even setting aside the dispositive issue of delegation, the district court also erred in its substantive arbitrability decision. If the district court had been the proper decision-maker as to arbitrability, it should have ordered Archer's claims to arbitration.

***First***, federal courts must apply a strong presumption of arbitrability. The Federal Arbitration Act expresses Congress's strong public policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24–25 (1983). Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* Moreover, Congress further intends that the Court "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). This includes doubts as to ambiguous terms within a contract, which likewise must be resolved in favor of arbitration. *Harvey v. Joyce*, 199 F.3d 790, 793–94 (5th Cir. 2000). The district court erred by applying the opposite presumption, resolving any doubts against arbitration.

***Second***, this general presumption accords with case law specifically addressing arbitration clauses that except injunctive relief. In such situations, when a complaint requests both injunctive relief and damages, courts read the exception to permit injunctive relief from a court either (1) as a preliminary matter to preserve the status quo pending arbitration or (2) on a permanent basis after the plaintiff secures an arbitration award in its favor. *Lawrence v. Comprehensive Bus. Servs.*, 833 F.2d 1159, 1163 (5th Cir. 1987); *Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972);

*Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983); *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213, 217–18 (S.D.N.Y. 1993); *WMT Invs., LLC v. Visionwall Corp.*, 09 CIV. 10509, 2010 WL 2720607, at *3–4 (S.D.N.Y. June 28, 2010).

When a case involves both arbitrable and non-arbitrable claims, federal law also requires the arbitrable claims to be sent to arbitration, even if it results in piecemeal litigation of the different claims. *Moses H. Cone*, 460 U.S. at 20 ("[R]elevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement."); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration." (internal quotation marks omitted)); *Harvey*, 199 F.3d at 795–96 (stay must be imposed as to non-arbitrable parties pending resolution of related arbitration in order to avoid "thwarting the federal policy in favor of arbitration . . . ."); *Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 449 (S.D. Tex. 2012) ("[T]he prospect of litigating similar claims before different tribunals does not grant district courts discretion to deny a motion to compel arbitration of the arbitrable claims.").

This is precisely the plausible—and substantively correct—reading in favor of arbitrability that the district court should have given the clause, that the parties may come to court seeking injunctive relief, but still must arbitrate any claim for damages. Because doubts must be resolved in favor of arbitration, *Moses H. Cone*, 460 U.S. at 24–25; *Pennzoil*, 139 F.3d at 1067, a plausible reading is all that is required, *see AT&T Techs.*, 475 U.S. at 650.

But this is not just a plausible reading; it is the best reading of the clause. It preserves the parties' right to arbitrate Archer's damages claims while also upholding the court's role in any injunctive proceedings. This reading also properly balances the harms between the two outcomes: This Court has held that incorrectly sending a claim to arbitration is not an irreparable harm, but incorrectly denying arbitration is. *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983). Thus, the district court should have ordered Archer's lawsuit to arbitration and then, depending upon the outcome of the arbitration, Archer could have pursued any valid claim for permanent injunctive relief in the district court.[6]

[6] Archer already has demonstrated that it has no intention to seek preliminary injunctive relief. As discussed above, Archer has failed to pursue such relief in any manner for more than four and a half years (making it impossible to argue that Archer would suffer irreparable harm in the absence of such preliminary relief).

***Third***, Archer's proposed interpretation runs directly contrary to the federal policy in favor of arbitration by eviscerating the arbitration clause. As Archer would have it, simply tacking a request for unspecified injunctive relief onto its claim for damages qualifies this case as an "action seeking injunctive relief," rendering even its damages claim subject to a jury trial. But the Court's "inquiry is not guided by the legal labels attached to the plaintiffs' claims; rather, it is guided by the factual allegations underlying those claims." *Harvey*, 199 F.3d at 794–95. Here, Archer's factual allegations and its conduct do not come close to establishing an "action seeking injunctive relief."

Archer's injunctive-relief request is a bare conclusion that "violations" are "continuing," ROA.35–36 (Compl. ¶¶ 61, 68), and Archer does not even attempt to allege plausible facts in support of the four elements required for injunctive relief: (1) irreparable injury; (2) inadequacy of remedies at law; (3) balance of hardships favors a remedy in equity; and (4) public interest. *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008); *see also Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1322 (5th Cir. 1981) (plaintiff must allege "specific facts" to support finding of irreparable injury). During the more than four-and-a-half-year period since filing its complaint, Archer has done nothing to seek any form of preliminary injunctive relief. The magistrate judge rightfully rejected Archer's reliance

on its injunctive relief claim, holding that Archer's claims for "tens of millions of dollars" in damages predominated over its putative claim for injunctive relief, which sought such relief at only the "most superficial level." ROA.440–441.

Moreover, in February 2014, while Archer's motion for reconsideration was pending, the relationships between Archer and all of the Manufacturer Appellants ended when Archer ceased to be an authorized dealer for any of them. ROA.959–960. Archer did nothing at that time, or at any time since, to seek any form of injunctive relief to restore those relationships. *See generally* ROA.1–15. Under Fifth Circuit law, when, as here, the plaintiff's relationship with the defendant has ended, injunctive relief is unavailable. *Hendricks*, 546 F. App'x at 520; *Humphreys v. City of Ganado*, 467 F. App'x 252, 257 (5th Cir. 2012) (per curiam); *Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 602 (S.D. Tex. 2010). Archer's legal labels cannot render this an "action seeking injunctive relief." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (party cannot avoid arbitration by recasting claims to avoid terms of agreement).

Finally, the exception for "actions seeking injunctive relief" does not stand alone. Rather, it is situated within a classic broad arbitration clause that renders "[a]ny dispute arising under or related to this Agreement" arbitrable except those subject to the carve-out, ROA.504; ROA.510;

ROA.522. *See Moses H. Cone*, 460 U.S. at 5 (clause rendering arbitrable "'[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract'" was "broad arbitration clause"); *Pennzoil*, 139 F.3d at 1067 (similar clause constituted "broad arbitration clause[] capable of expansive reach"). To accept Archer's reading of the clause would allow one party unilaterally to void the parties' agreement to arbitrate merely by requesting injunctive relief, however attenuated that request. The strong federal policy in favor of arbitration forbids such an interpretation.

* * * * * * * *

The district court never should have reached the arbitrability of these claims because the parties delegated that issue to the arbitrator. But even had it been proper to reach that issue, the district court erred by granting Archer a jury trial—with its attendant discovery, time, and expense—on its predominant damages claims.

## III. THE MAGISTRATE JUDGE CORRECTLY ESTOPPED ARCHER FROM DENYING ARBITRATION WITH THE NON-SIGNATORIES.

The Court should affirm the magistrate judge's ruling that the Archer is estopped from denying arbitration with the non-signatory Appellants.[7] *See*

[7] The signatory Appellant is Dental Equipment LLC, which does business as the three entities that signed the relevant Dealer Agreements, Pelton & Crane, Marus, and DCI Equipment. The non-signatory Appellants include Schein, Danaher Corporation, and Manufacturer Appellants

ROA.441–442. Although the district court did not reach this part of the magistrate judge's ruling, ROA.661, in the specific context of arbitration, an appellate court is empowered under 28 U.S.C. § 2106 to go beyond what the district court addressed in order to "achieve justice" by giving effect to the FAA's policy in favor of "summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone*, 460 U.S. at 29; *see also Joslyn Mfg. Co. v. Koppers Co.*, 40 F.3d 750, 759 n.12 (5th Cir. 1994).

This is particularly true when the Court has before it the full briefs below "from both parties on the merits of arbitrability." *Moses H. Cone*, 460 U.S. at 29. The parties fully briefed equitable estoppel to both the magistrate judge, ROA.77–82; ROA.172–178; ROA.208–212; ROA.241–245; ROA.256–257; ROA.384–389; ROA.404–406; ROA.421–422, and the district judge, ROA.457–463; ROA.476–482; ROA.572–579; ROA.600–603; ROA.614–616; ROA.622–623. The magistrate judge ruled on the issue, so this Court has a ruling below to review. ROA.441–442. In the interests of efficiency and justice, this Court should affirm that ruling rather than ordering a time-consuming remand in a case already pending for nearly five years.

The Supreme Court has held that the Federal Arbitration Act permits a non-signatory to an arbitration agreement to compel arbitration, on

---

Instrumentarium Dental Inc., Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation.

equitable estoppel grounds, if the relevant state contract law permits.[8] *Crawford*, 748 F.3d at 261–62 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)); *see also Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 n.1 (5th Cir. 2016) ("[A] contract to arbitrate may be enforceable by a non-signatory if authorized by applicable state law."). This principle has even more force here, where the arbitration clause does not expressly exclude or prohibit arbitration with non-signatories. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

---

[8] The magistrate judge found that the parties had agreed that *Grigson* controls the equitable estoppel issue between them and, therefore, it did not need to decide whether *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), "would call for further analysis under state law." ROA.442 n.2. Subsequent to the magistrate judge's decision below, this Court held that equitable estoppel must be analyzed under applicable state, not federal, law. *Crawford*, 748 F.3d at 253, 261–62. All three Dealer Agreements are governed by North Carolina law. ROA.504; ROA.510; ROA.522. North Carolina, in turn, applies the same test as enunciated in *Grigson*. *See, e.g.*, *Barker v. Fox Den Acres, Inc.* (*In re Barker*), 510 B.R. 771, 780–81 (Bankr. W.D.N.C. 2014) (applying North Carolina law and utilizing the same test as in *Grigson*); *James C. Greene Co. v. Great Am. E & S Ins.*, 321 F. Supp. 2d 717, 719–20 (E.D.N.C. 2004) (applying North Carolina law and citing *Grigson* with approval); *Artesia Springs, LLC v. DS Waters of Am., Inc.*, No. 14-ca-791, 2015 WL 12712643, at *3–5 (W.D. Tex. Jan. 13, 2015) ("In determining when a non-signatory to an arbitration agreement may compel arbitration against a signatory, North Carolina courts follow the Fourth Circuit. Like the Fifth Circuit, the Fourth Circuit has adopted the 'intertwined claims test' for this determination." (citations omitted)), *report and recommendation adopted*, No. 14-ca-791, 2015 WL 12712644 (W.D. Tex. Jan. 31, 2015). Accordingly, Appellants cite both Fifth Circuit and North Carolina law on equitable estoppel.

Although arbitration generally is a creature of contract, a non-signatory can compel a signatory to arbitrate in two independent (and alternative) circumstances. The linchpin of either equitable estoppel test is fairness, preventing a litigant from having "'it both ways'" by seeking on one hand "to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision," while on the other hand denying "arbitration's applicability because the defendant is a non-signatory." *Id.* at 528. First, a non-signatory can compel a signatory to arbitrate when the signatory's claim against the non-signatory relies on the written agreement containing the arbitration clause or "makes reference to or presumes the existence of the written agreement." *Grigson*, 210 F.3d at 527. Second, equitable estoppel also applies when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* Each of these two tests is independently sufficient to invoke equitable estoppel, but the doctrine is "much more readily applicable" when, as here, both *Grigson* tests are satisfied. *Grigson*, 210 F.3d at 527–28.

Archer must arbitrate its claims against the non-signatory Appellants, first, because its claims directly "rely on the terms of the written" Dealer Agreements, which provided Archer with the distribution rights it claims

were wrongfully terminated. *Grigson*, 210 F.3d at 527; *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).

The Dealer Agreements give rise to Archer's right to distribute the relevant products, and the decision to reduce Archer's sales territory under that agreement is the primary cause of the injury Archer alleges. ROA.442. Moreover, Archer's alleged success in selling these products supposedly motivated Schein and Burkhart to agree with the Manufacturer Appellants to reduce Archer's sales territory. ROA.23–27 (Compl. ¶¶ 26–33). Most important, without the alleged reduction in sales territory under the Dealer Agreements, Archer could not assert the boycott claim at the core of its Complaint. *See Am. Bankers Ins. Group*, 453 F.3d at 623 (explaining that arbitration with non-signatory is appropriate where claims "either literally or obliquely" rely on the agreement containing the arbitration clause). There can be no doubt that Archer's claims at least "relate to" the Dealer Agreements and therefore fall within the ambit of the broad arbitration clause here, which requires to arbitrate all claims "arising under or relating to" the Dealer Agreements. *See, e.g.*, ROA.504 (Dealer Agreement § 12.8). Thus, the magistrate judge correctly ruled that the first *Grigson* test compels Archer to arbitrate with all of the Appellants, because Archer has to rely on the Dealer Agreements in order to allege that it was wrongfully excluded from the market. ROA.442.

Archer also must arbitrate its claims against the non-signatory Appellants under the second prong of *Grigson*, because Archer's claimed injury flows from an alleged conspiracy among Dental Equipment LLC (the signatory Appellant under the three Dealer Agreements) and all of the remaining Appellants. *Grigson*, 210 F.3d at 527; *Klopfer*, 816 F. Supp. 2d at 295–96 (allegations of "concerted misconduct" are sufficient to invoke equitable estoppel). Archer premises its entire claim on the existence of a single antitrust conspiracy among ***all*** of the Appellants. *See, e.g.*, ROA.16–17 (Compl. ¶ 1), ROA.26–27 (Compl. ¶¶ 1, 33). According to Archer, the Manufacturer Appellants and Schein together engaged as a single unit in interdependent and concerted misconduct, namely a conspiracy to terminate or restrict Archer's Dealer Agreements with the Manufacturer Appellants as a result of alleged pressure from Burkhart and Schein. *Id.*; *see also* ROA.25 (Compl. ¶ 31) ("[The Manufacturer Appellants] agreed to join [Schein and Company X's] illegal boycott and deprive Archer Dental of the ability to distribute dental equipment it needed to compete effectively."); ROA.25–26 (Compl. ¶ 32) ("[The Manufacturer Appellants], Schein and Company X collectively agreed that Dynamic and Archer Dental would be cut off from selling Pelton & Crane, Marus and DCI dental equipment in Oklahoma and Northwest Arkansas."); ROA.26–27 (Compl. ¶ 33) ("The decision to restrict and terminate Archer Dental and Dynamic was a collective decision between

and among horizontal competitors Schein and Company X and their common manufacturer Danaher.”).

Such allegations of concerted and intertwined misconduct by all of the Appellants are the core of the factual and legal case that Archer seeks to prove at trial. For example, Archer has not asserted any independent claim solely against Schein. Rather, it has sued both Schein and the Manufacturer Appellants, claiming that all are “jointly and severally liable,” as is always done in putative antitrust conspiracy cases. See ROA.37 (Compl. at 22) (seeking judgment “[a]gainst all Defendants, jointly and severally”).[9]

These allegations are more than sufficient to meet the second *Grigson* test. Further, equitable estoppel has particular force when applied to the non-signatory Defendants that are affiliates of Dental Equipment LLC (Danaher, Corporation, Instrumentarium Dental Inc., Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation), because

[9] Courts have repeatedly compelled arbitration with a non-signatory based on similar allegations of interconnected and concerted misconduct. *See, e.g.*, *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398–99 (5th Cir. 2006) (holding non-signatory defendants could compel arbitration where there was no way to bring actions against non-signatory defendants without considering the conduct of the signatory defendants); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374–75 (4th Cir. 2012); *In re Barker*, 510 B.R. at 781 (concluding, under North Carolina and federal law, that debtor was estopped from opposing non-signatories’ efforts to compel arbitration because debtor’s complaint alleged substantially interdependent and concerted misconduct among all of the defendants).

Archer has made claims against the corporate affiliates of the signatory for the same course of conduct in which the signatory allegedly engaged. *See, e.g.*, *Harvey*, 199 F.3d at 795 (non-signatory could compel arbitration because its potential liability arose and was inseparable from claims against its signatory owner, and because allowing suit to go forward against non-signatory "could have a critical impact in the . . . arbitration"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.").

* * * * * * * *

Archer's allegations depend on the existence of the Dealer Agreements that contain the relevant arbitration clauses. And those claims likewise allege concerted misconduct on behalf of all Appellants, signatories and non-signatories alike. Accordingly, the magistrate judge correctly held that "[b]oth branches of the [*Grigson*] test appear to apply here." ROA.442. This Court should do likewise, and send all parties to arbitration.

## CONCLUSION

The judgment of the district court should be reversed, and the district court should be directed to enter an order compelling arbitration of all claims as to all parties and staying all further court proceedings.

Respectfully submitted,

/s/ *Jonathan B. Pitt*
JONATHAN B. PITT
LIAM J. MONTGOMERY
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

LAYNE E. KRUSE
NORTON ROSE FULBRIGHT US LLP
*1301 McKinney, Suite 5100*
*Houston, Texas 77010*
*(713) 651-5151*

BRETT C. GOVETT
NORTON ROSE FULBRIGHT US LLP
*2200 Ross Avenue, Suite 3600*
*Dallas, Texas 75201*
*(214) 855-8118*

*Attorneys for Appellants Danaher Corporation ,Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

/s/ *Paul F. Schuster*
PAUL F. SCHUSTER
CYNTHIA KEELY TIMMS
LOCKE LORD LLP
*2200 Ross Avenue, Suite 2800*
*Dallas, Texas 75201*
*(214) 740-8000*

CHRISTOPHER ONDECK
ADRIAN FONTECILLA
STEPHEN CHUK
PROSKAUER ROSE LLP
*1001 Pennsylvania Avenue, N.W.*
*Washington, DC 20004*
*(202) 416-5865*

*Attorneys for Appellant Henry Schein, Inc.*

March 17, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel of record by using the Court's ECF system on March 17, 2017.

Kay Lynn Brumbaugh
Andrews Kurth Kenyon LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Tel: (214) 659-4400
Fax: (214) 659-4401
kaylynnbrumbaugh@andrewskurth.com

Cameron Phair Pope
Andrews Kurth Kenyon LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: (713) 220-4142
Fax: (713) 220-4285
cameronpope@andrewskurth.com

*/s/ Jonathan B. Pitt*
JONATHAN B. PITT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 8,984 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Expanded BT font.

*/s/ Jonathan B. Pitt*
JONATHAN B. PITT

*Counsel for Appellants Danaher Corp., Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

March 17, 2017

## CERTIFICATE OF ECF FILING COMPLIANCE

The undersigned hereby certifies that on March 17, 2017, the foregoing was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Pursuant to 5TH CIR. R. 25.2, the undersigned certifies that (1) required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper documents; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Jonathan B. Pitt*
JONATHAN B. PITT

*Counsel for Appellants Danaher Corp., Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

March 17, 2017