No. 16-41674

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

ARCHER AND WHITE SALES, INC.,

*Plaintiff-Appellee*,

vs.

HENRY SCHEIN, INC., DANAHER CORPORATION,
INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC,
KAVO DENTAL TECHNOLOGIES LLC, AND
DENTAL IMAGING TECHNOLOGIES CORPORATION,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Texas
No. 2:12-CV-00572

# BRIEF OF APPELLEE


Kay Lynn Brumbaugh
ANDREWS KURTH KENYON LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
(214) 659-4400
(214) 659-4401 (Fax)

Cameron Pope
ANDREWS KURTH KENYON LLP
600 Travis Street, Suite 4200
Houston, TX 77002
(713) 220-4142
(713) 220-4285 (Fax)

*Counsel for Plaintiff–Appellee*

## Certificate Of Interested Persons

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

*Plaintiff-Appellee*

Archer and White Sales, Inc. ("Archer")

*Counsel for Archer*

Kay Lynn Brumbaugh
ANDREWS KURTH KENYON LLP
1717 Main Street, Suite 3700
Dallas, TX 75201

Cameron Pope
ANDREWS KURTH KENYON LLP
600 Travis Street, Suite 4200
Houston, TX 77002

*Defendants-Appellants*

Henry Schein, Inc. ("Schein")
Danaher Corporation ("Danaher")
Instrumentarium Dental Inc.
Dental Equipment LLC
KaVo Dental Technologies, LLC
Dental Imaging Technologies Corp.

*Counsel for Schein*

Paul F. Schuster
Cynthia Keely Timms
LOCKE LORD LLP
2200 Ross Ave., Suite 2800
Dallas, TX 75201

Christopher E. Ondeck
Adrian Fontecilla
Stephen R. Chuk
PROSKAUER ROSE LLP
1001 Pennsylvania Ave. NW
Suite 600 South
Washington, DC 20016

*Counsel for Danaher, Instrumentarium Dental Inc., Dental Equipment LLC, KaVo Dental Technologies, LLC, Dental Imaging Technologies Corp.*

Jonathan B. Pitt
Liam J. Montgomery
WILLIAMS & CONNOLLY, L.L.P.
725 Twelfth Street, N.W.
Washington, DC 20005

Layne E. Kruse
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010

Brett C. Govett
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201

*s/ Kay Lynn Brumbaugh*
Kay Lynn Brumbaugh
Counsel for Plaintiff-Appellee

## Statement Regarding Oral Argument

Archer believes the District Court's denial of Appellants' motions to compel arbitration can be affirmed on the briefs, without oral argument. Appellants' contention that this action seeking injunctive relief should be arbitrated is, as the District Court found, "without merit" and "wholly groundless." ROA.681. The contractual clause at issue expressly excepts "actions seeking injunctive relief" from arbitration. Nevertheless, Archer would be pleased to present oral argument should the Court request it.

## Table Of Contents


Certificate Of Interested Persons .................... i

Statement Regarding Oral Argument .................... iii

Table Of Authorities .................... vi

Introduction .................... 1

Statement Of Issues Presented For Review .................... 2

Statement Of The Case .................... 3

A. Archer files an action seeking injunctive and other relief for an ongoing conspiracy .................... 3

B. Appellants move to compel arbitration under a clause that excludes "actions seeking injunctive relief" .................... 6

C. The Magistrate Judge finds this "is clearly an action seeking injunctive relief," but still compels arbitration .................... 7

D. The District Court reverses because the plain language of the arbitration clause excludes this action .................... 9

Summary Of The Argument .................... 11

Argument .................... 12

A. The parties did not agree to arbitrate actions seeking injunctive relief like this .................... 13

B. The District Court was right to decide arbitrability .................... 17

1. The parties did not delegate the question of arbitrability to the arbitrator .................... 17

2. The District Court correctly held that this action falls squarely within the express carve-out ..... 21

3. Appellants' arbitrability argument is "wholly groundless" ..... 26

C. The District Court correctly applied the arbitration clause's plain language to determine its scope ..... 29

1. Expressed intent not to arbitrate certain disputes (as here) overrides the presumption of arbitrability ..... 30

2. Appellants' narrow interpretation founders on the plain language of the exclusion ..... 32

3. The District Court's holding follows the arbitration clause, it does not "eviscerate" it ..... 36

D. The five nonsignatory Appellants cannot invoke the arbitration clause ..... 40

1. Appellants' duty not to violate antitrust statutes arises independently of the agreement ..... 41

2. Appellants' concerted misconduct is not enough to compel arbitration ..... 46

Conclusion ..... 49

Certificate Of Service ..... 51

Certificate Of Compliance ..... 52

# Table Of Authorities

## Cases

*Aggarao v. MOL Ship Mgmt. Co.*,
675 F.3d 355 (4th Cir. 2012) .................................................... 47

*Alvarado v. Lynch*,
655 F. App'x 226 (5th Cir. 2016) ............................................... 16

*Am. Bankers Ins. Grp., Inc. v. Long*,
453 F.3d 623 (4th Cir. 2006) .................................................... 42

*Barker v. Fox Den Acres, Inc. (In re Barker)*,
510 B.R. 771 (Bankr. W.D.N.C. 2014) ....................................... 47

*Bitstamp Ltd. v. Ripple Labs Inc.*,
No. 15-cv-01503-WHO, 2015 WL 4692418 (N.D. Cal.
Aug. 6, 2015) ............................................................................ 25

*Bollinger Shipyards Lockport LLC v. Northrop
Grumman Ship Sys., Inc.*,
No. 08-4578, 2009 WL 86704 (E.D. La. Jan. 12,
2009) .................................................................................... 23, 24

*Brantley v. Republic Mortg. Ins. Co.*,
424 F.3d 3926 (4th Cir. 2005) ............................................. 41, 44

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
345 F.3d 347 (5th Cir. 2003) ............................................... 46, 47

*Broad v. Rockwell Int'l Corp.*,
642 F.2d 929 (5th Cir. 1981) .................................................... 29

*Brown v. Pac. Life Ins. Co.*,
462 F.3d 384 (5th Cir. 2006) .................................................... 47

*Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB*,
9 F. App'x 196 (4th Cir. 2001) .................................................. 48

*Celanese Corp. v. BOC Grp. PLC*,
No. 3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006) .................... 21

*Cellairis Franchise, Inc. v. Duarte*,
No. 2:15-cv-00101-WCO, 2015 WL 11422299 (N.D. Ga. July 20, 2015) .................... 24

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
832 F.3d 534 (5th Cir. 2016) .................... 19

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) .................... 21, 22

*Dechkovskaia v. Dechkovskaia*,
780 S.E.2d 175 (N.C. Ct. App. 2015) .................... 15

*Denny's Marina, Inc. v. Renfro Prods., Inc.*,
8 F.3d 1217 (7th Cir. 1993) .................... 43

*DeVries v. Experian Info. Sols., Inc.*,
No. 16-cv-02953, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .................... 25

*Douglas v. Regions Bank*,
757 F.3d 460 (5th Cir. 2014) .................... 26, 27

*ECRI v. McGraw-Hill, Inc.*,
809 F.2d 223 (3d Cir. 1987) .................... 23

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) .................... 12, 15, 30, 38

*Erving v. Va. Squires Basketball Club*,
468 F.2d 1064 (2d Cir. 1972) .................... 32

*Fletcher v. Honeywell Int'l, Inc.*,
__ F. Supp. 3d __, No. 3:16-cv-302, 2016 WL 4939561 (S.D. Ohio Sept. 14, 2016) .................... 38

*Frydman v. Diamond*,
No. 1:14-cv-8741-GHW, 2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015) .......... 33, 34, 35, 36

*Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*,
173 F.3d 946 (5th Cir. 1999) .......... 37

*Glanville v. Dupar, Inc.*,
727 F. Supp. 2d 596 (S.D. Tex. 2010) .......... 39

*Grigson v. Creative Artists Agency, L.L.C.*,
210 F.3d 524 (5th Cir. 2000) .......... 46

*Halliburton Energy Servs., Inc. v. BJ Servs. Co.*,
No. 2:08-cv-475, 2010 WL 2991031 (E.D. Tex. July 28, 2010) .......... 19

*Hendricks v. UBS Fin. Servs., Inc.*,
546 F. App'x 514 (5th Cir. 2013) (per curiam) .......... 22, 23, 39

*Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*,
765 F.3d 396 (5th Cir. 2014) .......... 17

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 17

*In re Humana Inc. Managed Care Litig.*,
285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom., PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) .......... 47

*Humphreys v. City of Ganado, Tex.*,
467 F. App'x 252 (5th Cir. 2012) (per curiam) .......... 39

*Int'l Union of Operating Eng'rs, Local 17, AFL-CIO v. Union Concrete & Constr. Corp.*,
147 F. Supp. 3d 202 (W.D.N.Y. 2015) .......... 30

*ITT Educ. Servs., Inc. v. Arce*,
533 F.3d 342 (5th Cir. 2008) .................................................... 37

*Kemlon Prods. & Dev. Co. v. United States*,
638 F.2d 1315 (5th Cir. 1981) .................................................. 37

*King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.)*,
707 F.3d 917 (8th Cir. 2013) ............................................... 44, 45

*Kubala v. Supreme Prod. Servs., Inc.*,
830 F.3d 199 (5th Cir. 2016) ............................................... 16, 18

*Lawrence v. Comprehensive Bus. Servs. Co.*,
833 F.2d 1159 (5th Cir. 1987) .................................................. 32

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
449 F. App'x 704 (10th Cir. 2011) ........................... 42, 43, 44, 45

*Lloyd v. J. P. Morgan Chase & Co.*,
791 F.3d 265 (2d Cir. 2015)...................................................... 17

*Manning v. United States*,
546 F.3d 430 (7th Cir. 2008) .................................................... 15

*McCaskey v. Cont'l Airlines, Inc.*,
133 F. Supp. 2d 514 (S.D. Tex. 2001) ................................ 15, 23

*Microsoft Mobile, Inc. v. LG Chem Am., Inc. (In re Lithium Ion Batteries Antitrust Litig.)*,
No. 15-CV-03443-GR, 2016 WL 5791357 (N.D. Cal. Oct. 4, 2016)....................................................................... 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..................................................................... 46

*Motorola Credit Corp. v. Uzan*,
274 F. Supp. 2d 481 (S.D.N.Y. 2003), *aff'd in relevant part,* 388 F.3d 39 (2d Cir. 2004) ................................. 48

*Mytee Prods., Inc. v. Harris Research, Inc.*,
439 F. App'x 882 (Fed. Cir. 2011) ............................................. 35

*Oracle Am., Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................. 25, 26

*Palmer Ventures LLC v. Deutsche Bank AG*,
254 F. App'x 426 (5th Cir. 2007)................................................ 42

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
687 F.3d 671 (5th Cir. 2012) ............................................... 18, 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ..................................................................... 12

*Procar II, Inc. v. Dennis*,
721 S.E.2d 369 (N.C. Ct. App. 2012) ......................................... 29

*In re Publ'n Paper Antitrust Litig.*,
690 F.3d 51 (2d Cir. 2012)........................................................... 43

*QPro Inc. v. RTD Quality Servs. USA, Inc.*,
761 F. Supp. 2d 492 (S.D. Tex. 2011) ........................................ 21

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*,
816 F. Supp. 213 (S.D.N.Y. 1993) .............................................. 33

*Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*,
666 F.2d 1130 (8th Cir. 1981) ...................................................... 40

*Sauer-Getriebe KG v. White Hydraulics, Inc.*,
715 F.2d 348 (7th Cir. 1983) ........................................................ 33

*Singleton v. Haywood Elec. Membership Corp.*,
588 S.E.2d 871 (N.C. 2003) .......................................................... 20

*Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*,
No. 08-CVS-9450, 2009 WL 406688 (N.C. Super. Ct. Feb. 18, 2009) ........ 46

*State of N.Y. v. Oneida Indian Nation of N.Y.*,
90 F.3d 58 (2d Cir. 1996) ........ 13, 30, 31

*State v. Philip Morris USA Inc.*,
685 S.E.2d 95 (N.C. 2009) ........ 15

*Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*,
840 F. Supp. 2d 935 (E.D. Va. 2012) ........ 25

*T.M.C.S., Inc. v. Marco Contractors, Inc.*,
780 S.E.2d 588 (N.C. Ct. App. 2015) ........ 20

*TRC Envtl. Corp. v. LVI Facility Servs., Inc.*,
612 F. App'x 759 (5th Cir. 2015) (per curiam) ........ 13, 14, 16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ........ 49

*Weingarten Realty Inv'rs v. Miller*,
661 F.3d 904 (5th Cir. 2011) ........ 40

*Wilk v. Am. Med. Ass'n*,
895 F.2d 352 (7th Cir. 1990) ........ 39

*Will-Drill Res., Inc. v. Samson Res. Co.*,
352 F.3d 211 (5th Cir. 2003) ........ 13, 17, 30

*Williams v. Home Depot USA, Inc.*,
No. 3:15-CV-3655-L, 2016 WL 4098698 (N.D. Tex. July 8, 2016) ........ 35

*WMT Inv'rs, LLC v. Visionwall Corp.*,
No. 09 Civ. 10509(RMB), 2010 WL 2720607 (S.D.N.Y. June 28, 2010) ........ 33

*Zen Music Festivals v. Stewart*,
72 F. App'x 168 (5th Cir. 2003) .................................................. 35

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ............................................................... 5, 39

**Statutes**

15 U.S.C. § 1 ........................................................................... 43

15 U.S.C. § 26 ............................................................................. 5

TEX. BUS. & COM. CODE § 15.05(a) (West 2011) ............................. 43

TEX. BUS. & COM. CODE § 15.21(b) (West 2011) ............................... 6

**Other Authorities**

American Arbitration Association, Rules and Forms,
Construction Industry Arbitration Rules and
Mediation Procedures, Rule 9, *available at*
www.adr.org .............................................................................. 14

American Arbitration Association Guide to drafting
dispute resolution clauses, Model Preliminary Relief
Clause, 26 West's Legal Forms, Alt. Disp. Res. § 1.8 ............... 34

BLACK'S LAW DICTIONARY 35 (10th ed. 2014) ................................. 15

## Introduction

This appeal concerns an arbitration clause in an agreement between Archer and an alleged predecessor to Appellant Dental Equipment LLC. The clause requires binding arbitration under American Arbitration Association ("AAA") rules for any dispute arising under or related to the agreement "*except for actions seeking injunctive relief*" and intellectual property disputes.[1] Archer's lawsuit is an "action seeking injunctive relief"—as both the Magistrate Judge and the District Court held below. Archer seeks injunctive relief under federal and state statutes (and damages) as the victim of Appellants' ongoing group boycott designed to protect their price-fixing conspiracy and restrict competition. Under the terms of the parties' agreement, therefore, Archer's "action"—a term that by definition encompasses all of Archer's claims—is not subject to arbitration.

Despite holding that this *is* an action seeking injunctive relief, the Magistrate Judge refused to apply the plain language of the arbitration clause. The Magistrate Judge instead committed the question of arbitrability to the arbitrator, held that the four nonsignatory Appellants could also avail themselves of the arbitration clause even though Archer's antitrust claims do not

---

[1] Unless otherwise noted, all emphasis is added and all internal citations and quotations are omitted.

involve violation of the terms of the contract, and stayed Archer from pursuing its action (including injunctive relief) pending arbitration. Archer immediately appealed to the District Court.

The District Court reversed, because Appellants' argument "that this action seeking injunctive relief should be referred to arbitration is wholly without merit based on the plain language of the arbitration clause itself." The clause exempts from arbitration any action seeking injunctive relief—whether on its own or with a claim for damages. The Magistrate Judge's "predominant relief" test has no support in the arbitration clause's text or in the law. This Court should affirm the District Court.

## Statement Of Issues Presented For Review

1. There is no presumption that the parties entered into an agreement to arbitrate. Did the parties to the Dealer Agreement agree to arbitrate actions seeking injunctive relief?

2. Courts decide arbitrability unless the parties' agreement clearly and unmistakably delegates the determination to an arbitrator, such as by incorporating the AAA rules. Here the arbitration clause expressly *excludes* application of the AAA rules to "actions seeking injunctive relief" like Archer's lawsuit. Did the District Court correctly decide arbitrability itself?

3. Did the District Court correctly hold that Archer's action is outside the scope of the arbitration clause based on the plain language of the exclusion for "actions seeking injunctive relief"?

4. Because it correctly held that this action falls within the express exclusion of "actions seeking injunctive relief," the District Court did not reach the question of whether the nonsignatory Appellants can invoke the arbitration clause. Should this Court reach the issue? And, if so, should Archer be compelled to arbitrate when its statutory claims do not rely on the agreement?

## Statement Of The Case

### A. Archer files an action seeking injunctive and other relief for an ongoing conspiracy

Archer, a family-owned distributor of dental equipment, competes directly against Schein, the largest distributor of dental equipment in the country, and against "Company X" (not named as a defendant).[2] ROA.18, 20 (¶¶9, 15); ROA.666–67. Danaher is the largest manufacturer of dental equipment in the country, and the four other Appellants are wholly-owned subsidiaries of Danaher. ROA.4 (¶10); ROA.666–67. (Archer refers to Danaher and its subsidiaries collectively herein as the "Danaher Defendants".)

---

[2] Appellants go outside the record to name Company X in their brief. *See* App. Br. at 4.

Archer learned that Schein, Company X, and the Danaher Defendants were engaged in ongoing violations of federal and state antitrust laws, and filed the underlying suit seeking damages and injunctive relief. *See* ROA.16–37. Appellants contend that Archer's complaint includes only a "two-sentence," unsupported request for injunctive relief.[3] Appellants are mischaracterizing the 22-page complaint.

The complaint's first paragraph introduces the nature of Appellants' unlawful conspiracy and the damages it has caused Archer in the past. ROA.16–17 (¶1). The second and third paragraphs explain that Appellants' "conspiracy is *continuing*," and that their conspiracy "enables [Appellants and Company X] to enjoy the economic benefits that flow from conspiring to operate an unlawful cartel that refuses to compete for the sale of dental equipment, forecloses competition by others in the sale of dental equipment and fixes prices for dental equipment purchased by dental professionals throughout the United States." ROA.17–18 (¶¶2–3).

The rest of Archer's complaint follows this past-to-present structure. The "Background" section describes Archer's history, the nature of the dental equipment industry, the conspiracy to thwart

---

[3] App. Br. at 4.

Archer's growth across the country, and the agreement between Schein, Company X, and Danaher to restrict Archer's distribution of dental equipment. ROA.21–33 (¶¶19–52). The section ends by explaining that "Defendants' and Company X's conspiracy is *continuing* and injury to Archer Dental from that conspiracy is *continuing*," and offers a then-recent example. ROA.32–33 (¶52).

Count One alleges that Appellants and Company X have combined and conspired, and are "*continuing*" to combine and conspire, "to eliminate competition for the sale of dental equipment and to maintain margins on the sale of such equipment at anticompetitive levels," in violation of the Sherman Act. ROA.33–35 (¶¶55–61). Archer pleads that these violations are "past *and continuing*," and seeks both damages and injunctive relief. ROA.34–35 (¶¶59–61).[4]

Count Two alleges that Appellants and Company X have combined and conspired, and are "*continuing*" to combine and conspire in violation of Texas Free Enterprise and Antitrust Act ("TFEAA"). ROA.35–36 (¶¶62–69). Archer provides an example: a continuing illegal *per se* boycott that prevents Archer from

[4] "Any person, firm, corporation, or association" is "entitled to sue for and have injunctive relief … against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. This section is available to any antitrust plaintiff who continues to face "threatened loss or damage." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 129–30 (1969).

competing with Schein or other horizontal competitors in Texas. ROA.35 (¶63). And again, Archer pleads that these violations are "past and *continuing*," and seeks both damages and injunctive relief. (*Id.* at ¶¶ 66–68.)[5]

Lastly, Archer's prayer for relief asks the court to declare that Appellants have violated the Sherman Act and the TFEAA, to preliminarily and permanently enjoin Appellants from violating these statutes, and to award Archer damages. ROA.37. Archer's prayer for relief thus pleads for preliminary and permanent injunctive relief *before* pleading for damages.

Contrary to Appellants' claims, therefore, Archer's requests for injunctive relief are not "perfunctory" or "boilerplate."[6] They suffuse and are integral to the sixty-nine numbered paragraphs of Archer's detailed complaint.

### B. Appellants move to compel arbitration under a clause that excludes "actions seeking injunctive relief"

Appellants filed motions to compel arbitration under a clause in a 2007 Dealer Agreement between Pelton & Crane and Archer,

---

[5] Any person "whose business or property is threatened with injury" by reason of anything declared unlawful by the TFEAA may sue "to enjoin the unlawful practice temporarily or permanently." TEX. BUS. & COM. CODE § 15.21(b) (West 2011).

[6] App. Br. at 3, 6, 18.

which established Archer as a distributor of Pelton & Crane products. ROA.671. Appellants allege that Appellant Dental Equipment LLC is the successor to Pelton & Crane and the Agreement.[7]

The Dealer Agreement was drafted by Pelton & Crane. *See* ROA.655 n.4. It is governed by North Carolina law and provides in relevant part:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes relating to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.

ROA.504.[8]

### C. The Magistrate Judge finds this "is clearly an action seeking injunctive relief," but still compels arbitration

In May 2013, the Magistrate Judge issued a five-page order granting Appellants' motions to compel arbitration. ROA.439–43.

---

[7] *See* App. Br. at 5.

[8] The same arbitration clause is found in agreements between Archer and two alleged other predecessors to Appellant Dental Equipment LLC. *See* App. Br. at 5–6. However, Appellants did not move to compel arbitration under these agreements. *See* ROA.73–74, ROA.170–71. Thus, despite Appellants' frequent mention of these other agreements in their brief, they are irrelevant to this appeal. Nonetheless, the same arguments that apply to the Pelton & Crane Dealer Agreement apply to these other agreements.

The Magistrate Judge found that, "[o]n the most superficial level, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that relief." ROA440–41 (italics in original).

However, the Magistrate Judge deemed the purported "superficiality" insufficient to trigger the exclusion for actions seeking injunctive relief. *Id.* He observed that Archer "does not seek *only* injunctive relief," and was "persuaded that damages" are "the predominant relief sought." ROA.441 (italics in original). The Magistrate Judge further found there is a "question of whether the exception for actions seeking injunctive relief should be limited to actions for an injunction in aid of arbitration or to enforce an arbitrator's award," and that this question should be left for an arbitrator to decide. *Id.*

The arbitration clause does *not* impose an "only relief" or "predominant relief" requirement. Nor does it limit the exclusion to actions in aid of arbitration or to enforce an arbitration award. By its plain language, the clause exempts all "actions seeking injunctive relief" from arbitration. ROA.671. Nonetheless, the Magistrate Judge refused to apply the arbitration clause's plain language, instead committing the question of the exclusionary clause's scope to the arbitrator. ROA.441. The Magistrate Judge also held that those Appellants who were not parties to the agreement were entitled to invoke its arbitration clause. ROA.441–42.

### D. The District Court reverses because the plain language of the arbitration clause excludes this action

Archer filed objections to and a motion for reconsideration of the Magistrate Judge's order in the District Court in June 2013. ROA.444–65. The District Court held a hearing on Archer's motion in November 2016, and issued a seventeen-page order reversing the Magistrate Judge in December 2016. *See* ROA.645–62; ROA.944–76. Appellants try to fault Archer for not pursuing preliminary injunctive relief during the period between when Archer filed the motion to reconsider and the District Court's order.[9] Appellants neglect to mention, however, that the Magistrate Judge stayed Archer from taking any such action. ROA.443 ("[T]his action is stayed pending arbitration of the claims asserted herein.").

The District Court first held that Appellants' "proposed interpretation of the exclusion clause fails based on the plain language of the clause itself." ROA.694. "[T]he phrase 'except actions seeking injunctive relief' is clear on its face—any action seeking injunctive relief is excluded from mandatory arbitration. Plaintiff's action seeks injunctive relief." *Id.* Thus, "[a]pplying the plain meaning of the clause, Plaintiff's action is excluded from mandatory

---

[9] *See* App. Br. at 9. Appellants also complain that "Archer did not file any request for a ruling from the district court in light of the passage of time." *Id.* But a litigant is entitled to presume that a district court is managing its docket as expeditiously as it can, without prompting.

arbitration." *Id.* There is, "in this case, a 'positive assurance' that no reasonable interpretation of the arbitration clause would force this action into arbitration." ROA.697 (quoting *Pers. Sec. & Safety Sys., Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

The District Court next held that the question of arbitrability should not be sent to an arbitrator for two reasons. *See* ROA.697–702. First, "the Parties did not clearly and unmistakably agree to arbitrate the arbitrability of actions seeking injunctive relief." ROA.697. While adoption of the AAA rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, the arbitration clause here provides "that the AAA rules would govern only when the dispute did *not* fall within the expressly excluded categories." ROA.698–99 (italics in original).

Second, Appellants' "argument that Plaintiff's claims fall within the scope of the arbitration clause is wholly groundless." ROA.697. Appellants have "no plausible argument that this action" seeking injunctive relief "falls within the narrowed parameters of those disputes subject to arbitration." ROA.702. It would therefore "be senseless to refer the issue of arbitrability to the arbitrator, only to have the arbitrator read the plain language of the clause and then send the Parties back to this Court." ROA.701.

Because this action falls within the express exclusion for actions seeking injunctive relief, the District Court did not have to

decide, and so did not reach, the question of whether the nonsignatories to the Dealer Agreement can enforce its arbitration clause under an equitable estoppel theory. ROA.702.

## Summary Of The Argument

The District Court properly declined to compel arbitration. There is no valid agreement to arbitrate between Archer and Pelton & Crane, the parties to the Dealer Agreement, and, even if there were, this particular dispute does not fall within the scope of any such agreement.

When the parties' agreement expresses their intent *not* to arbitrate certain disputes, that intent controls. Here, the parties to the Dealer Agreement agreed not to arbitrate "actions seeking injunctive relief." Because the term "action" encompasses all claims within a proceeding, Archer's lawsuit is an action seeking injunctive relief—as both the Magistrate Judge and the District Court held below. There is thus no valid agreement to arbitrate Archer's action.

Even assuming a valid agreement to arbitrate, the District Court correctly held that this lawsuit falls outside its scope. Appellants argue that this was not an issue for the District Court because the Dealer Agreement's reference to the AAA rules delegated the decision to the arbitrator. But the Dealer Agreement's arbitration clause expressly provides that the AAA rules apply

"*except for* actions seeking injunctive relief." The question of arbitrability was thus for the District Court to answer. And, as the District Court held, there is no reasonable interpretation of the arbitration clause that would force this action seeking injunctive relief into arbitration.

Lastly, even where an arbitration clause encompasses the claims at issue (unlike the clause here), a nonsignatory to the clause cannot compel a signatory to arbitrate unless the signatory must rely on the agreement to establish its cause of action. Archer's statutory antitrust claims exist independently of, and do not rely on, the Dealer Agreement. There is thus no basis to compel Archer to arbitrate against the nonsignatory Appellants.

The District Court's judgment should be affirmed.

## Argument

The Federal Arbitration Act ("FAA") "does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293 (2002). The FAA makes arbitration agreements "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967).

"Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it

is the duty of courts to enforce not only the full breadth of the arbitration clause, *but its limitations as well.*" *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 62 (2d Cir. 1996) (reversing dismissal for lack of jurisdiction and remanding because claim fell within exclusionary clause of arbitration provision). Because the parties to the Dealer Agreement specifically excepted Archer's action from mandatory arbitration, the District Court was duty-bound to enforce that exception.

### A. The parties did not agree to arbitrate actions seeking injunctive relief like this

The determination of whether a party should be compelled to arbitrate involves two steps: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the particular dispute falls within the scope of that arbitration agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). "There is no presumption regarding step one (i.e., a presumption that parties entered into an agreement to arbitrate); step one is evaluated on the basis of ordinary state-law principles that govern the formation of contracts." *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 F. App'x 759, 761 (5th Cir. 2015) (per curiam).

In *TRC Environmental*, for example, the parties' contract divided disputes "into two categories, those that arise under the Contract Documents and those that do not." *Id.* at 761. The contract

did not require arbitration for the former, but specified that all disputes "not under the Contract Documents" would be arbitrated under the AAA's Construction Industry Rules. *Id.* at 760–61. These rules (like the AAA's other rules) give the arbitrator power to rule on his or her jurisdiction.[10]

The district court held that the plaintiff was not required to arbitrate because its breach of contract claim arose under the Contract Documents. *Id.* at 761. This Court affirmed, because "[u]nder the first prong of *Will-Drill* the parties have not agreed to arbitrate." *Id.* at 761–62 ("Since we find there was no agreement to arbitrate disputes arising under the Contract Documents and, therefore, the subcontract we do not reach the second step of the arbitration analysis.").

Likewise, the Dealer Agreement unambiguously divides disputes into two categories: (1) "actions seeking injunctive relief" or intellectual property disputes (which are not subject to arbitration); and (2) all other disputes (which must be arbitrated under AAA rules). Under North Carolina law, "when the terms of a contract are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written and enforced as the parties

[10] *See generally* American Arbitration Association, Rules and Forms, Construction Industry Arbitration Rules and Mediation Procedures, Rule 9, *available at* www.adr.org.

have made it." *State v. Philip Morris USA Inc.*, 685 S.E.2d 95, 91 (N.C. 2009). Because Archer's lawsuit is an "action seeking injunctive relief," the parties have not agreed to arbitrate.

"An action, unlike a claim, encompasses all the parties and claims presently and properly before th[e] Court." *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 526 (S.D. Tex. 2001); *see Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008) (finding that the term "'action' incorporates all elements of a civil suit, including the claims within that suit"); *Dechkovskaia v. Dechkovskaia*, 780 S.E.2d 175, 180 (N.C. Ct. App. 2015) (recognizing that an "action" is "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree"); BLACK'S LAW DICTIONARY 35 (10th ed. 2014) (defining "action" as "a civil or criminal judicial proceeding").

Any action that includes a claim for injunctive relief which is plausible on its face thus triggers the exclusion; that the plaintiff might also advance other claims in the action, including claims for monetary damages, is irrelevant. *See Waffle House*, 534 U.S. at 294 ("[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."). Here, Archer's statutory claims for injunctive relief are more than plausible—they are an inseparable part of this action.

Appellants will likely protest that in *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016), a panel of the Court recently declared "the only issue at the first step" of the arbitration analysis "is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." But the arbitration clause in *Kubala* covered without exception "all employment-related disputes," and expressly included the plaintiff employee's Fair Labor Standards Act claim. *Id.* at 201. *Kubala*'s reasoning is inapplicable when, as here, the parties expressly agreed that certain disputes would *not* be subject to arbitration.

There was an agreement to arbitrate *some* set of claims in *TRC Environmental* (i.e., claims not arising under the Contract Documents). *See* 612 F. App'x at 761–62. The Court nonetheless held that the parties had not agreed to arbitrate disputes arising under the Contract Documents based on the plain language of the parties' agreement. 612 F. App'x at 762.[11] Similarly, under the plain language of the Dealer Agreement, Archer and Pelton & Crane

---

[11] Moreover, to the extent there is an inconsistency between the 2015 *TRC Environmental* and 2016 *Kubala* decisions, "one panel of this court cannot overrule a prior panel's decision in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the Supreme Court." *Alvarado v. Lynch*, 655 F. App'x 226, 228 (5th Cir. 2016).

expressly did not agree to arbitrate actions seeking injunctive relief (like this one) or intellectual property disputes.

"[I]f an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability." *Lloyd v. J. P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir. 2015) (affirming denial of motion to compel arbitration) (italics in original). Here, the Dealer Agreement is best construed to express the parties' intent not to arbitrate this action seeking injunctive relief.

## B. The District Court was right to decide arbitrability

### 1. The parties did not delegate the question of arbitrability to the arbitrator

Appellants wrongly assume a valid agreement to arbitrate, and skip straight to the second prong of the test—whether this dispute falls within the agreement's scope. *See Will-Drill Res., Inc.*, 352 F.3d at 214.

"The question whether parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). There is a "strong pro-court presumption as to the parties' likely intent." *Id.* at 86; *see Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy,*

*Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 408 (5th Cir. 2014) ("[T]he law presumes that courts have plenary power to decide the gateway question of a dispute's arbitrability").

Appellants try to overcome this strong pro-court presumption by relying on the exception for delegation clauses. If an arbitration agreement contains a clause delegating to the arbitrator the primary power to rule on the arbitrability of a specific claim, a court must refer a claim to arbitration to allow the arbitrator to decide the question. *Kubala*, 830 F.3d at 201–02. The agreement in *Kubala*, for example, "contained a 'delegation clause' stating that any disputes as to the interpretation or applicability of the agreement are to be resolved in the first instance by the arbitrator." *Id.* at 201. There is *no such clause* in the Dealer Agreement.

Appellants argue, citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012), that the Dealer Agreement's reference to the AAA rules constituted a delegation of arbitrability to the arbitrator.[12] But, as the District Court recognized, the arbitration clause in *Petrofac* "did not contain any exclusions. Rather, it was a standard broad arbitration clause." ROA.657. The parties in *Petrofac* agreed to submit "all claims and disputes" regarding their contract to binding arbitration, and agreed

---

[12] *See* App. Br. at 16–17.

that the arbitration would be conducted by the AAA under its Construction Industry Rules. *Id.* at 674.

The same is true for the two other cases that Appellants cite. *See Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 540, 546 (5th Cir. 2016) (stating agreement required "the parties to submit all disputes to binding arbitration" and adopted the JAMS Rules without limitation); *Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08-cv-475, 2010 WL 2991031, at *2 (E.D. Tex. July 28, 2010) (noting it was undisputed that the agreement required the parties to "resolve all patent and other intellectual property disputes" through arbitration and provided for application of AAA rules without modification or exclusion).

In contrast, the Dealer Agreement does not adopt the AAA rules for all disputes between Archer and Pelton & Crane. Its arbitration clause "represents an agreement that the AAA rules would govern only when the dispute did *not* fall within the expressly excluded categories." ROA.657–58. In particular, as drafted by Pelton & Crane, the Agreement's arbitration clause expressly provides that the AAA rules apply "*except for* actions seeking injunctive relief" and intellectual property disputes:

> Any dispute arising under or related to this Agreement (*except for* actions seeking injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.

ROA.671.

Under North Carolina law (as in this Circuit), a contract's various terms "are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Singleton v. Haywood Elec. Membership Corp.*, 588 S.E.2d 871, 875 (N.C. 2003). Moreover, "[p]ursuant to well settled contract law principles, the language of [an] arbitration clause should be strictly construed against the drafter of the clause." *T.M.C.S., Inc. v. Marco Contractors, Inc.*, 780 S.E.2d 588, 597 (N.C. Ct. App. 2015) (strictly construing 30-day time limit for demanding arbitration against drafter). The Dealer Agreement's explicit and parenthetical exception can and must be given effect as a matter of law; the AAA rules apply "except for" actions seeking injunctive relief or to intellectual property disputes.

The District Court thus correctly held that the Dealer Agreement does not clearly and unmistakably delegate the question of arbitrability to the arbitrator.[13]

**2. The District Court correctly held that this action falls squarely within the express carve-out**

Appellants contend that the District Court's retention of the question of arbitrability "contravened Fifth Circuit case law."[14] Appellants are wrong. Unlike the Dealer Agreement here, *neither* of the arbitration clauses in the two Fifth Circuit opinions on which Appellants rely—*Crawford* and *Hendricks*—include an exclusion like that in the Dealer Agreement.

The arbitration provision in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014), flatly provided that "'[a]ny and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively

---

[13] Moreover, even if an arbitration agreement "may evidence clear and unmistakable intent to arbitrate questions of arbitrability between the two parties to that agreement"—and the Dealer Agreement does not—"this hardly evidences a clear intent between [a nonsignatory] and [signatory] Plaintiffs to arbitrate questions of arbitrability." *Celanese Corp. v. BOC Grp. PLC*, No. 3:06-CV-1462-P, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6, 2006). An arbitrator only has power to determine arbitrability as to the agreement's signatories. *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

[14] App. Br. at 18.

settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association.'" The provision further provided that arbitration would be "the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement," but that the parties were not "prevent[ed]" from "seeking injunctive relief" from any court for breach of the agreement. *Id.* The *Crawford* agreement thus did *not* carve out injunctive relief from application of the AAA rules, unlike the Dealer Agreement.

The arbitration provision in *Hendricks v. UBS Financial Services, Inc.*, 546 F. App'x 514, 518 (5th Cir. 2013) (per curiam), required all "disputes" between the parties to be arbitrated, "including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment," "[w]ith the exception of *claims* for injunctive relief" or for denial of benefits under disability or medical plans. In a separate sentence, the provision stated that the arbitration was to be conducted under the rules of the Financial Industry Regulatory Authority. *Id.* at 519 n.4. The *Hendricks* plaintiffs brought a "compensation claim," and did "not contest that the nature of the dispute" fell within the arbitration clause. 546 F. App'x at 519–20. They argued that their claim was not arbitrable because part of the relief they sought on the claim was an injunction. *Id.* at 520. The Court rejected the argument

because the plaintiffs did not confine the relief on their compensation claim to an injunction, and left the decision on the scope of arbitration to the arbitrators. *Id.* at 520–21.

In contrast to the *claim*-specific exclusion in *Hendricks*, the Dealer Agreement's exclusion, when triggered, applies to the entire *action* or *dispute*. Any "dispute arising under or related to" the Dealer Agreement must be arbitrated under AAA rules "except for *actions* seeking injunctive relief and *disputes* relating to trademarks, trade secrets or other intellectual property of Pelton & Crane." ROA.671. Again, "[a]n action, unlike a claim, encompasses *all the* parties and *claims*" before the court. *McCaskey*, 133 F. Supp. 2d at 526. The Dealer Agreement's exclusion is thus broader than the provision in *Hendricks*, encompassing any action in which injunctive relief is plausibly sought—like Archer's action.[15]

Appellants also cite *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Systems, Inc.*, No. 08-4578, 2009 WL 86704 (E.D. La. Jan. 12, 2009), as support for their argument.[16] But the arbitration provision in *Bollinger* did not contain any exclusion

---

[15] Not every action would plausibly qualify as an action seeking injunctive relief. To illustrate, a breach of contract generally cannot be enjoined unless damages at law would be an inadequate remedy. *See ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

[16] App. Br. at 19.

whatsoever, let alone one similar to that in the Dealer Agreement. *See* 2009 WL 86704, at **3–4. The provision required the plaintiff to submit all claims for additional costs to its customer, and then, if it disagreed with the customer's decision, to have "'the claim finally resolved by arbitration'" under AAA rules. *Id.* at *4. The plaintiff filed suit to have the court compel arbitration of its claim for additional costs, and the court held that the arbitrator had to decide arbitrability. *Id.* at **6–7. *Bollinger* is thus irrelevant.

Appellants further contend that the District Court's retention of the question of arbitrability contravened case law from the Ninth Circuit and federal district court cases from Georgia, Virginia, and California.[17] The arbitration provisions in these cases, however, are all fundamentally distinguishable from the Dealer Agreement:

- The arbitration provision in *Cellairis Franchise, Inc. v. Duarte*, No. 2:15-cv-00101-WCO, 2015 WL 11422299, at *2 (N.D. Ga. July 20, 2015), explicitly provided that "'the scope and validity of the arbitration obligations'" under the parties' agreement were "'to be determined by an arbitrator and not a court.'"

---

[17] *See* App. Br. at 19–22.

- The arbitration provision in *Systems Research & Applications Corp. v. Rohde & Schwarz Federal Systems, Inc.*, 840 F. Supp. 2d 935, 941, 944 (E.D. Va. 2012), incorporated the AAA rules without exception, and the parties "agreed that they would not institute any action in court related to a dispute that is or could be subject to arbitration."

- The arbitration provision in *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-cv-01503-WHO, 2015 WL 4692418, at *1 (N.D. Cal. Aug. 6, 2015), expressly provided that "'the determination of the scope or applicability of this agreement to arbitrate'" was a subject for the arbitrator.

- The arbitration provision in *Microsoft Mobile, Inc. v. LG Chem America, Inc. (In re Lithium Ion Batteries Antitrust Litigation)*, No. 15-CV-03443-GR, 2016 WL 5791357, at *3 (N.D. Cal. Oct. 4, 2016), incorporated United Kingdom arbitration rules under which arbitrability *must* "'be decided directly by the arbitral tribunal.'" In contrast, the AAA rules merely give the arbitrator power to rule on his or her jurisdiction, if the parties' agreement allows (and the Dealer Agreement does not). *See* ROA.118.

- The arbitration provision in *DeVries v. Experian Information Solutions, Inc.*, No. 16-cv-02953, 2017 WL 733096, at *2 (N.D. Cal. Feb. 24, 2017), included a delegation clause providing that "the arbitrator shall have exclusive authority" to resolve any "dispute relating to the scope and enforceability" of the arbitration provision.

Appellants' principal authority is *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), in which the arbitration provision contained one clause mandating arbitration for all disputes except for a subset of certain intellectual property

disputes, and a second clause incorporating the United Nations Commission on Internal Trade Law ("UNCITRAL") rules on arbitration. The Ninth Circuit held (notably without citing any authority) that incorporating the UNCITRAL rules delegated the question of arbitrability to the arbitrator, even though the plaintiff argued that its claims qualified for the intellectual property carve-out. *Id.* at 1075–76.

Key to *Oracle*, however, is that the carve-out clause did *not* exempt the subset of intellectual property disputes from the UNCITRAL rules. *See id.* The Dealer Agreement here does just the opposite—its parenthetical expressly carves out actions seeking injunctive relief from application of the AAA rules. The parties thus left the question of arbitrability for the District Court to resolve.

### 3. Appellants' arbitrability argument is "wholly groundless"

The Dealer Agreement's limited adoption of the AAA rules does not constitute clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability in these circumstances. But even assuming it did, the District Court was nonetheless right to reach the question because Appellants' argument in favor of arbitrability is "wholly groundless." *Douglas v. Regions Bank*, 757 F.3d 460, 463 (5th Cir. 2014).

Appellants assert that the wholly groundless exception applies "only when there is no 'legitimate argument' in favor of arbitration because the claim at issue has 'nothing to do with' the contract containing the arbitration clause."[18] Appellants then insist that the exception cannot apply here because, they claim, Archer's claims "relate to" the Dealer Agreement.[19] Appellants are mischaracterizing the "wholly groundless" exception. It does not look for a mere relationship to "the contract containing the arbitration clause"; it looks to the terms of the arbitration clause itself.

The two-part test "demands that even *if* there is a delegation provision (step one), the court must ask whether the averment that the claim falls within the scope of the arbitration agreement is wholly groundless (step two)." *Regions Bank*, 757 F.3d at 464 (italics in original). An averment is wholly groundless when the argument that there is some connection between the dispute and the arbitration agreement is untenable. *Id.* at 463. In other words, there must be plausible arguments that the dispute is covered by the arbitration agreement as well as plausible arguments that it is not. *Id.* The District Court correctly held that there is no plausible argument "that this action seeking injunctive relief should be

---

[18] App. Br. at 22.

[19] App. Br. at 23–25.

referred to arbitration" when the plain language of the arbitration clause excludes actions seeking injunctive relief from arbitration. ROA.658–60.

Appellants argue that the District Court's holding is unsound because "the magistrate judge found a plausible reading of the contract."[20] But the Magistrate Judge found that "this lawsuit *is clearly an action seeking injunctive relief*." ROA440–41. He simply refused to follow the arbitration clause's plain language, and instead invented three speculative reinterpretations of the exclusion—

| Magistrate Judge's rewriting of the arbitration clause (underlined and in red) |
|---|
| Any dispute arising under or related to this Agreement (except for actions seeking only injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) |
| Any dispute arising under or related to this Agreement (except for actions seeking predominantly injunctive relief and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) |
| Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief in aid of arbitration or to enforce an arbitrator's award and disputes related to trademarks, trade secrets or other intellectual property of Pelton & Crane) |

20 App. Br. at 25.

*See* ROA.441. The Magistrate Judge's reinterpretations find no support in the arbitration clause (or even the Dealer Agreement as a whole). *See* ROA.501–04.

"A court may not rewrite a term of a contract by 'interpretation' when that term is clear and unambiguous on its face." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947 (5th Cir. 1981); *see Procar II, Inc. v. Dennis*, 721 S.E.2d 369, 371 (N.C. Ct. App. 2012) ("When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit."). The Magistrate Judge's rewriting of the arbitration clause is not a plausible argument that this action seeking injunctive relief is covered by the arbitration agreement. Indeed, the fact that the argument relies on rewriting the Dealer Agreement to add words that the parties did not use is evidence of the argument's complete *lack* of plausibility.

Appellants' argument that an arbitrator must decide arbitrability is, as the District Court held, wholly groundless "based on the plain language of the arbitration clause itself." ROA.660.

### C. The District Court correctly applied the arbitration clause's plain language to determine its scope

When, as here, an arbitration clause does not delegate arbitrability to the arbitrator, the court's second analytical step is

determining whether the particular dispute falls within the scope of that arbitration agreement. *Will-Drill Res., Inc.*, 352 F.3d at 214. Appellants argue that the District Court made three errors in its arbitrability decision. None of Appellants' alleged errors withstands scrutiny.

#### 1. Expressed intent not to arbitrate certain disputes (as here) overrides the presumption of arbitrability

Appellants first argue that the District Court failed to properly apply the "strong presumption of arbitrability."[21] "The parties, however, may limit by agreement the claims they wish to submit to arbitration. If the parties make such an intention clear, the federal policy favoring arbitration must yield." *Oneida Indian Nation of N.Y.*, 90 F.3d at 61. That is, "if an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability." *Int'l Union of Operating Eng'rs, Local 17, AFL-CIO v. Union Concrete & Constr. Corp.*, 147 F. Supp. 3d 202, 207 (W.D.N.Y. 2015) (italics in original). Even the policy in favor of arbitration "does not require parties to arbitrate when they have not agreed to do so." *Waffle House, Inc.,* 534 U.S. at 293.

---

[21] App. Br. at 26–27.

In *Oneida*, a tribal-state gaming compact included a binding arbitration provision that excluded from its ambit any claim by the state that the tribe was conducting a particular class of gaming activity "not authorized by this Compact." 90 F.3d at 61. The district court held that the exclusion was inapplicable because the face of the State's complaint did not claim that the gaming activity at issue was not authorized by the compact. *Id.* at 62. The Second Circuit reversed, recognizing that "[w]hile the federal policy favoring arbitration requires that we resolve doubts in favor of arbitrability, it does not demand that we extend the reach of arbitration beyond the intended scope of the clause providing for it." *Id.* at 63. As any action challenging whether a game was authorized by the compact fell within the compact's exclusionary clause, and the import of the state's allegations was that the nation was operating a game not authorized under the compact, the state could not be compelled to arbitration. *Id.* at 62–63.

Likewise, the parties to the Dealer Agreement clearly and unambiguously agreed to "except" all actions seeking injunctive relief and intellectual property disputes from the claims they wished to submit to arbitration. The presumption of arbitrability cannot stretch to Archer's action seeking injunctive relief; the Dealer Agreement expressly prohibits it.

### 2. Appellants' narrow interpretation founders on the plain language of the exclusion

Appellants' second argument is that the general presumption favoring arbitration "accords with case law specifically addressing arbitration clauses that except injunctive relief."[22] The five cases on which Appellants rely, however, concern agreements that merely provided for injunctive relief in service of broad arbitration clauses that (unlike here) committed the question of the scope of arbitration to the arbitrator(s):

- In *Lawrence v. Comprehensive Business Services Co.*, 833 F.2d 1159, 1161, 1163 (5th Cir. 1987), the contract included an arbitration clause requiring arbitration under AAA rules and a separate clause allowing a party to apply to court "for an injunction in appropriate cases."

- The contract in *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1066–67 & n.1 (2d Cir. 1972), included an arbitration clause that was "as broad as can be imagined," and a specific provision to enjoin Erving "by appropriate injunction proceedings against playing basketball" during the pendency of any arbitration proceeding.

[22] App. Br. at 27.

- The arbitration clause in *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983), "could not be broader" and required arbitration under the rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC"). The ICC rules expressly authorized parties to seek interim injunctive relief and provided that "'they shall not by so doing be held to infringe the agreement to arbitrate or to affect the relevant powers reserved to the arbitrator.'" *Id.*
- The arbitration provision in *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 215 (S.D.N.Y. 1993), incorporated ICC rules as well, and allowed the parties to seek "'temporary and permanent injunctions'" from the arbitration tribunal or from a court of competent jurisdiction.
- In *WMT Investors, LLC v. Visionwall Corp.*, No. 09 Civ. 10509(RMB), 2010 WL 2720607, at *2 (S.D.N.Y. June 28, 2010), the contract included an arbitration clause requiring arbitration under AAA rules without exception and a separate clause allowing a party to seek equitable relief in "any court of competent jurisdiction."

In contrast, the Dealer Agreement's arbitration clause does not authorize injunctive relief in service of arbitration—it exempts from arbitration under the AAA rules the entire "action" in which injunctive relief is sought.

As the District Court observed (ROA.654), a "very similar clause" was addressed in *Frydman v. Diamond*, No. 1:14-cv-8741-GHW, 2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015). The agreement in *Frydman* provided for arbitration but also included a clause specifying that, should any dispute arise between the parties "'which

gives rise to injunctive or equitable relief,'" the party "'initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action'" in court. *Id.* at *2.

Mirroring Appellants' arguments in this case, the *Frydman* defendants argued that the clause "should be read like a standard 'aid of arbitration' provision of the sort that allows a party to an arbitration agreement to seek equitable or injunctive relief either to enforce an arbitral award or to maintain the status quo pending arbitration." *Id.* at *6. The district court rejected the argument because it "founder[ed] on the plain language" of the parties' agreement, under which the right to pursue litigation in court was not in aid of arbitration but rather a substitute for arbitration. *Id.*

The language of the *Frydman* clause differed "markedly from common aid of arbitrations provisions," which "typically provide that litigation is permitted only in order to assist or supplement anticipated or pending arbitration." 2015 WL 5294790, at *7.[23] The *Frydman* court could not "accept the defendants' invitation to re-write [the clause in the parties' agreement] into an aid in arbitration

[23] *See*, *e.g.*, American Arbitration Association Guide to drafting dispute resolution clauses, Model Preliminary Relief Clause, 26 West's Legal Forms, Alt. Disp. Res. § 1.8 ("Either party … may, without waiving any remedy under this agreement, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the arbitral tribunal (or pending the arbitral tribunal's determination of the merits of the controversy).").

provision simply because that reading promotes arbitration." 2015 WL 5294790, at *7. So, too, does the Dealer Agreement's arbitration clause differ markedly from common aid of arbitration provisions. It likewise cannot be rewritten from a broad arbitration exception for any "action seeking injunctive relief" into a mere aid-of-arbitration provision.

Appellants also argue that the District Court should at a minimum have first compelled Archer to "arbitrate any claim for damages" before allowing Archer to pursue "permanent injunctive relief" in court,[24] because "federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement."[25]

---

[24] In a footnote, Appellants assert Archer "has demonstrated that it has no intention to seek preliminary injunctive relief," and cannot successfully seek such relief now. App. Br. at 29 n.6. "The Fifth Circuit has repeatedly held that courts must be mindful not to consider the merits of the underlying action under a motion to compel arbitration." *Williams v. Home Depot USA, Inc.*, No. 3:15-CV-3655-L, 2016 WL 4098698, at *2 (N.D. Tex. July 8, 2016). Considering whether Archer can actually obtain a preliminary injunction now (after having its hands tied for years by the Magistrate Judge's 2013 stay order) would impermissibly delve into the merits. Moreover, Archer is not required to seek a preliminary injunction to obtain a permanent injunction. *See Mytee Prods., Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 888 (Fed. Cir. 2011) (holding that failure to seek preliminary injunction was not a factor that had to be weighed in determining whether to issue a permanent injunction, because "[t]here are significant differences in the requirements and uses of preliminary and permanent injunctions"); *see also Zen Music Festivals v. Stewart*, 72 F. App'x 168, 170 (5th Cir. 2003) (recognizing there are "significant differences between a preliminary injunction and a permanent injunction"). Archer's request for permanent injunctive relief is alone sufficient to render this an "action seeking injunctive relief."

[25] App. Br. at 28–29.

Appellants' argument misses the point. The Dealer Agreement excepts the entire "*action* seeking injunctive relief," not just a particular claim for injunctive relief. *See Frydman*, 2015 WL 5294790, at *8 ("[T]he Court will construe [the agreement] to encompass the entirety of this action—which is on its face 'an action seeking injunctive or equitable relief'—not merely claims for equitable relief arising under this action."). Piecemeal resolution is thus barred by the terms of the parties' agreement; Archer's entire action falls outside the scope of the parties' agreement to arbitrate and must remain in court.

**3. The District Court's holding follows the arbitration clause, it does not "eviscerate" it**

Appellants argue that the District Court's judgment "eviscerat[es] the arbitration clause" because Archer avoids arbitration entirely simply by "tacking a request for unspecified injunctive relief onto its claim for damages."[26] Appellants are mischaracterizing Appellants' complaint. Archer's request for injunctive relief is neither "tacked on" nor "unspecified."

Appellants focus only upon those paragraphs in Archer's complaint specifically requesting the remedy of injunctive relief, while ignoring the lengthy factual allegations (in 52 numbered

---

[26] App. Br. at 30; *see id.* at 31–32.

paragraphs) giving rise to those requests for relief.[27] Archer's complaint provides detailed facts explaining Appellants' conspiracy in violation of specifically-identified antitrust laws, identifying how their conspiracy has harmed and continues to harm Archer. *See supra* at 3–6. The complaint then specifically pleads for a judgment "enjoin[ing] Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 15.05(a) of the TFEAA, TEX. BUS. & COM. CODE § 15.05(a)." ROA.37.

This is more than the law requires. *See Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999) ("[A] complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist.").

Appellants cite two cases in support of their argument that Archer's pleading is deficient, but neither case involves antitrust injury, and neither rests on the adequacy of a pleading. *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (holding that party met its burden for permanent injunction preventing disclosure of arbitrator's findings to third parties after "a full trial on the merits"); *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d

---

[27] *See* App. Br. at 30–31.

1315, 1316–17 (5th Cir. 1981) (reversing order permanently enjoining IRS from disclosing tax return information because the Court found "inadequate proof of irreparable harm and sufficient facts to show the government has a chance to prevail on its right to disclose such information").

The Dealer Agreement's arbitration clause does not require actions seeking injunctive relief to be in any particular form to trigger the exception. The parties to the Dealer Agreement chose to exclude the entire "action" if a party sought injunctive relief as a remedy. As the District Court held, Appellants' argument that this "substantially weaken[s] the arbitration clause simply cannot override the plain meaning of the words chosen by the parties in their agreement." ROA.655; *see Waffle House*, 534 U.S. at 294 ("[W]e do not … reach a result inconsistent with the plain text of the contract"); *Fletcher v. Honeywell Int'l, Inc.*, __ F. Supp. 3d __, No. 3:16-cv-302, 2016 WL 4939561, at **3–4 (S.D. Ohio Sept. 14, 2016) (holding that retirees' claim was not subject to arbitration because the parties agreed to arbitrate disputes between the company and "employees," and "'retirees' are no longer 'employees'").

Appellants further argue that injunctive relief is unavailable to Archer as a matter of law because Archer's relationship with the

Danaher Defendants ended in 2014.[28] Again, however, Appellants are relying on cases that have nothing to do with antitrust injury. *See Hendricks*, 546 F. App'x at 520 (recognizing that granting former employees an injunction preventing former employer from any act or practice that violated ERISA would be inappropriate); *Humphreys v. City of Ganado, Tex.*, 467 F. App'x 252, 257 (5th Cir. 2012) (per curiam) (affirming dismissal of claim seeking "an injunction barring the state from re-indicting [the plaintiff] for the same offenses" of attempted murder and aggravated assault with a deadly weapon); *Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596, 602 (S.D. Tex. 2010) (dismissing claim because former employees did not have standing to seek declaratory or injunctive relief to ensure that employer paid federal employment taxes in future).

Antitrust cases brought by private plaintiffs for injunctive relief "serve the public interest in that they effectively pry open to competition a market that has been closed by defendants' illegal restraints." *Zenith Radio*, 395 U.S. at 133. The ending of Archer's relationship with the Danaher Defendants does not forestall Archer from seeking injunctive relief against Schein and the Danaher Defendants for continuing to conspire to protect Schein and Company X against competition from Archer. *See Wilk v. Am. Med.*

---

[28] App. Br. at 31.

*Ass'n*, 895 F.2d 352, 371 (7th Cir. 1990) (affirming injunctive relief aimed at eliminating the anticompetitive effects of a boycott); *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d 1130, 1148 (8th Cir. 1981) ("[E]xclusion of appellant from the market, in our view, represents a 'threatened loss or injury' sufficient to require injunctive relief.").

Regardless, the only inquiry at this stage is whether Archer's action is one seeking injunctive relief. Because it is (as both the Magistrate Judge and the District Court held), Archer cannot be compelled to arbitration.

### D. The five nonsignatory Appellants cannot invoke the arbitration clause

Appellants argue that the Court should affirm the Magistrate Judge's ruling that the five Appellants who are not parties to the Dealer Agreement can invoke its arbitration clause. As the District Court correctly held that the arbitration clause is inapplicable to this action, the Court (like the District Court) need not reach this issue.[29] Nevertheless, the Magistrate Judge's ruling is wrong.

"An arbitration agreement can be invoked by a non-signatory only in rare circumstances." *Weingarten Realty Investors v. Miller*,

---

[29] If the Court reaches the issue, Archer agrees with Appellants that the Court can resolve it without remanding to the District Court. *See* App. Br. at 33.

661 F.3d 904, 912 (5th Cir. 2011). The Magistrate Judge found those circumstances here because, in his view, (1) Archer "has to rely on" the Dealer Agreement "to allege that it was wrongfully excluded from the market," and (2) because Archer alleges "'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" ROA.442 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)). With respect, the Magistrate Judge misunderstood Archer's allegations and misapplied the law.

**1. Appellants' duty not to violate antitrust statutes arises independently of the agreement**

A nonsignatory can invoke the principle of equitable estoppel to compel a signatory to an arbitration clause to arbitrate claims against the nonsignatory when "*each* of [the] signatory's claims against [the] nonsignatory makes reference to or presumes the existence of the written agreement, [such that] the signatory's claims *arise out of and relate directly to the written agreement*" containing the arbitration provision. *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (holding that nonsignatory could not compel arbitration).

The test, therefore, is whether the signatory's underlying complaint is "based on the nonsignatory's alleged breach of the obligations and duties assigned to it in the agreement, regardless of

the legal label assigned to the claim." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006); *see Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431–32 (5th Cir. 2007) (holding that equitable estoppel did not apply where the agreement "may play a role in the ultimate outcome of this suit, [but] is not a part of Plaintiffs' causes of action," since they were not seeking to use the agreement to hold the nonsignatory liable).[30]

"For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011). "The claims must be so intertwined with the agreement that it would be unfair to allow the signatory to rely on

---

[30] In *American Bankers*, for example, the plaintiffs purchased a promissory note that incorporated an agreement containing an arbitration clause. 453 F.3d at 625. The promissory note was allegedly part of a fraudulent scheme structured by the defendant, a nonsignatory to the agreement. *Id.* The plaintiffs sued when the note went unpaid, alleging causes of action against defendant arising out of its participation in the scheme. *Id.* The Fourth Circuit held that the defendant could invoke the arbitration clause because, "without the alleged breach of the Note, the [plaintiffs] would have no cause to complain," and, at root, the plaintiffs' claims sought to hold the defendant to the terms of the promissory note. *Id.* at 630. By contrast, Archer's claims against Appellants are independent of the Dealer Agreement, and do not seek to hold any Appellant to the Agreement's terms.

the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement." *Id.* at 709–10.

Here, *none* of Archer's claims relies on the Dealer Agreement. Archer does not contend that any of the Appellants breached any obligations or duties under the Dealer Agreement. *See* ROA.16–37. Instead, Archer is bringing antitrust conspiracy claims against Appellants under state and federal law. *See* 15 U.S.C. § 1 ("Every . . . conspiracy[ ] in restraint of trade . . . is declared to be illegal."); TEX. BUS. & COM. CODE § 15.05(a) (West 2011) ("Every . . . conspiracy in restraint of trade or commerce is unlawful.").

In essence, Archer alleges in its complaint that Schein and Company X agreed not to compete on price and not to bid against each other, and then, in furtherance of this price-fixing conspiracy, convinced the Danaher Defendants to restrict or terminate Archer. *See* ROA.16–18, 21–33 (¶¶1–3, 19–52). This kind of concerted action between competitors to protect themselves from price competition is known as horizontal price-fixing. *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1221 (7th Cir. 1993). "To prevail on a claim of horizontal price fixing, a plaintiff must demonstrate that the defendants entered into a conspiracy formed for the purpose and with the effect of raising prices." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 61 (2d Cir. 2012).

Archer's statutory claims thus exist "wholly separate" from the Dealer Agreement. *Brantley*, 424 F.3d at 396 (holding that claim for a statutory remedy was "wholly separate from any action or remedy" for breach of the underlying contract governed by the arbitration clause); *see King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.)*, 707 F.3d 917, 924 (8th Cir. 2013) (holding that nonsignatories could not compel arbitration of antitrust claims because, as here, the "antitrust conspiracy claims do not involve violation of the terms of the contract, the face of the contract does not provide the basis for the alleged injuries, and there is no evidence that the contract anticipated the precise type of relationship giving rise to the claims").

The Magistrate Judge cursorily declared that Archer "has to rely on" the Dealer Agreement "to allege that it was wrongfully excluded from the market." ROA.442. Similarly, Appellants argue that Archer allegedly cannot assert its boycott claim without the Dealer Agreement.[31] But a party does not "rely on" an agreement merely because the agreement is "factually significant" to the party's claims. *Lenox MacLaren*, 449 F. App'x at 709.

In *Lenox MacLaren*, for example, a manufacturer entered into an agreement with a distributor that contained an arbitration

[31] *See* App. Br. at 36.

clause, and later sued the distributor's parent company and other subsidiaries for antitrust violations. 449 F. App'x at 705–07. The defendants argued that the plaintiff was equitably estopped from avoiding arbitration because they "could not have carried out the alleged anticompetitive scheme without the Agreement." *Id.* at 709.

The Tenth Circuit rejected the argument. Although the agreement was "factually significant" to the antitrust claims because it "provided the opportunity" for the defendants "to engage in the anticompetitive conduct alleged," the agreement did "not form the legal basis for [the plaintiff's] claims." *Id.* at 710. The plaintiff was "not attempting 'to hold the non-signatory liable pursuant to duties imposed by the agreement,'" and its claims did not "depend on whether either [the distributor's] or the [defendants'] conduct was proper under the Agreement." *Id.* (quoting *Grigson*, 210 F.3d at 528). The same is true here.

Archer's antitrust claims regarding Appellants' conspiracy to fix prices exist independently of the Dealer Agreement, do not rely on a violation of the Agreement's terms, and there is no evidence the Agreement "explicitly anticipated a signatory would enter into the type of relationship with a non-signatory—here, the relationship being that of antitrust co-conspirators—that ultimately gave rise to the claims." *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d at 924.

### 2. Appellants' concerted misconduct is not enough to compel arbitration

A signatory can also be equitably estopped from avoiding arbitration against nonsignatories when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *Grigson*, 210 F.3d at 527. However, two claims being "inextricably intertwined" is "insufficient, standing alone, to justify the application of equitable estoppel" to compel arbitration. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–20 (1983) (holding that arbitration was not required despite allegations of substantially interdependent and joint misconduct between signatory and nonsignatory).

Thus, a nonsignatory cannot compel arbitration under an equitable estoppel theory unless there is "a 'close relationship between the entities involved,'" and "the claims against the nonsignatory are 'intimately founded in and intertwined with the underlying contract obligations.'" *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*, No. 08-CVS-9450, 2009 WL 406688, at *6 (N.C. Super. Ct. Feb. 18, 2009) (quoting *Sunkist Soft Drinks v.*

*Sunkist Growers*, 10 F.3d 753, 757 (11th Cir. 1993)).[32] Were it otherwise, "this expanded version of equitable estoppel would threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement." *Bridas*, 345 F.3d at 361.

Actual dependence on the underlying contract in making out claims against the nonsignatory defendants is "always the *sine qua non* of an appropriate situation for applying equitable estoppel." *In re Humana Inc. Managed Care Litig.*, 285 F.3d at 976. Indeed, all of the equitable estoppel authorities on which Appellants rely involve claims that depend upon the underlying contract.[33] In contrast, Archer's claims do *not* depend upon, and are *not* intertwined with,

---

[32] *See also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 975 (11th Cir. 2002), *rev'd on other grounds sub nom.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) (recognizing that collusive behavior between the signatory and nonsignatory parties "support an application of estoppel only when they establish that the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause").

[33] *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373–75 (4th Cir. 2012) (affirming equitable estoppel ruling because plaintiff alleged that the nonsignatory defendants had breached the employment contract containing the arbitration clause); *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398–99 (5th Cir. 2006) (finding no abuse of discretion in allowing arbitration because claims against nonsignatories depended on the nature of acts committed by signatories that were undisputedly covered by the underlying contract); *Barker v. Fox Den Acres, Inc. (In re Barker)*, 510 B.R. 771, 774, 781 (Bankr. W.D.N.C. 2014) (concluding that debtor was estopped because she alleged that nonsignatories were part of "a common transaction" involving the contract containing the arbitration clause).

the Dealer Agreement. Archer seeks to hold the nonsignatory Appellants liable for their involvement in an antitrust conspiracy. *See Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 507 (S.D.N.Y. 2003), *aff'd in relevant part,* 388 F.3d 39 (2d Cir. 2004) (holding that conspiracy claim, among other claims, was not subject to arbitration because it concerned "matters extrinsic to the contract" containing the arbitration clause).

Appellants argue that "equitable estoppel has particular force" regarding the nonsignatory Danaher Defendants because they are all part of the same corporate family as signatory Dental Equipment LLC.[34] The Magistrate Judge did not cite this corporate relatedness as a basis for his equitable estoppel ruling. *See* ROA.442. Regardless, the rule Appellants cite merely provides that "when the charges against a parent company and its subsidiary are *based on the same facts and are inherently inseparable*, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB*, 9 F. App'x 196, 203 (4th Cir. 2001).

Here, Archer seeks to hold each Appellant liable for its *separate* role in the antitrust conspiracy. The other Appellants would be liable to Archer even if Dental Equipment LLC was not

---

[34] App. Br. at 38–39.

part of the conspiracy. In fact, the other Appellants would be liable to Archer even if Dental Equipment LLC did not exist at all.

It was thus clear error for the Magistrate Judge to compel Archer to arbitrate its claims against the nonsignatories. Even if Archer's claims against Dental Equipment LLC are sent to arbitration (and they should not be), Archer's claims against the nonsignatories should remain in court.

## Conclusion

It is the duty of the courts to "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The terms of the Dealer Agreement expressly exclude any "actions seeking injunctive relief" from having to be arbitrated under the AAA rules, and Archer's lawsuit is an action seeking injunctive relief. The District Court should be affirmed in all respects.

April 11, 2017

Respectfully submitted,

*s/ Kay Lynn Brumbaugh*
Kay Lynn Brumbaugh
kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH KENYON LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
(214) 659-4400
(214) 659-4401 (Fax)

Cameron Pope
cameronpope@andrewskurth.com
ANDREWS KURTH KENYON LLP
600 Travis Street, Suite 4200
Houston, TX 77002
(713) 220-4142
(713) 220-4285 (Fax)

*Counsel for Plaintiff-Appellee*

## Certificate Of Service

I hereby certify that on April 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Jonathan B. Pitt
Liam J. Montgomery
WILLIAMS & CONNOLLY, L.L.P.
725 Twelfth Street, N.W.
Washington, DC 20005

Layne E. Kruse
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010

Brett C. Govett
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201

*Counsel for Defendants-Appellants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, KaVo Dental Technologies, LLC, Dental Imaging Technologies Corp.*

Paul F. Schuster
Cynthia Keely Timms
LOCKE LORD LLP
2200 Ross Ave., Suite 2800
Dallas, TX 75201

Christopher E. Ondeck
Adrian Fontecilla
Stephen R. Chuk
PROSKAUER ROSE LLP
1001 Pennsylvania Ave. NW
Suite 600 South
Washington, DC 20004-2533

*Counsel for Defendant-Appellant Henry Schein, Inc.*

*s/ Cameron Pope*
Cameron Pope

## Certificate Of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,690 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook or Calibri (12-point for footnotes).

Dated: April 11, 2017

*s/ Cameron Pope*
Cameron Pope
Attorney for Plaintiff-Appellee