No. 16-41674

# In the United States Court of Appeals for the Fifth Circuit

ARCHER AND WHITE SALES, INC.,
PLAINTIFF-APPELLEE

*v.*

HENRY SCHEIN, INC., DANAHER CORPORATION, INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO DENTAL TECHNOLOGIES, LLC, AND DENTAL IMAGING TECHNOLOGIES CORPORATION,
DEFENDANTS-APPELLANTS

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS (CIV. NO. 12-572)*
*(THE HONORABLE RODNEY GILSTRAP, J.)*

**APPELLANTS' JOINT REPLY BRIEF**


JONATHAN B. PITT
LIAM J. MONTGOMERY
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

LAYNE E. KRUSE
NORTON ROSE FULBRIGHT US LLP
*1301 McKinney, Suite 5100*
*Houston, Texas 77010*
*(713) 651-5151*

BRETT C. GOVETT
NORTON ROSE FULBRIGHT US LLP
*2200 Ross Avenue, Suite 3600*
*Dallas, Texas 75201*
*(214) 855-8118*

*Attorneys for Appellants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corporation*

PAUL F. SCHUSTER
CYNTHIA KEELY TIMMS
LOCKE LORD LLP
*2200 Ross Avenue, Suite 2800*
*Dallas, Texas 75201*
*(214) 740-8000*

CHRISTOPHER ONDECK
ADRIAN FONTECILLA
STEPHEN CHUK
PROSKAUER ROSE LLP
*1001 Pennsylvania Avenue, N.W.*
*Washington, DC 20004*
*(202) 416-5865*

*Attorneys for Appellant Henry Schein, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................ iv

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 3

I. The District Court Should Be Reversed Because It Failed To Follow the Parties' Clear and Unmistakable Delegation of Arbitrability to the Arbitrator. ........................................ 3

A. The Parties Delegated to the Arbitrator Whether This Dispute Fits the Carve-Out for "Actions Seeking Injunctive Relief." ........................................ 3

B. Archer Has Not Satisfied the "Wholly Groundless" Standard. ........................................ 8

C. Archer Mischaracterizes Fifth Circuit Precedent To Create a Dispute That Does Not Exist. ........................................ 10

II. The Plain Language of the Arbitration Clause Requires Arbitration. ........................................ 12

A. Appellants' Reading of the Arbitration Clause Preserves the Vitality of Both the Clause Itself and Its Exceptions. ........................................ 13

B. Archer's Reading of the Arbitration Clause Deprives It of Meaning. ........................................ 16

C. The Lack of Merit to Archer's Injunctive Relief Claim Underscores the Implausibility of Its Reading of the Arbitration Clause ........................................ 18

III. The Court Should Equitably Estop Archer from Denying Arbitration with the Non-Signatory Appellants. ........................................ 21

A. Archer's Claims Make Reference to and Presume the Existence of the Dealer Agreements. ........................................ 22

B. Archer Alleges Interdependent and Concerted Misconduct by All Appellants. ........................................ 24

CONCLUSION ........................................ 27

CERTIFICATE OF SERVICE ........................................ 29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)............................30
CERTIFICATE OF ECF FILING COMPLIANCE......................................31

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Bankers Ins. Grp. v. Long*,
453 F.3d 623 (4th Cir. 2006)....................22

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....................14

*Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*,
No. 08-4578, 2009 WL 86704 (E.D. La. Jan. 12, 2009)....................4

*Brantley v. Republic Mortg. Ins.*,
424 F.3d 392 (4th Cir. 2005)....................22, 24

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
345 F.3d 347 (5th Cir. 2003)....................21, 25

*Celanese Corp. v. BOC Grp. PLC*,
No. 3:06-cv-1462, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006)....................26

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
832 F.3d 534 (5th Cir. 2016)....................7

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014)....................5

*Douglas v. Regions Bank*,
757 F.3d 460 (5th Cir. 2014)....................8, 10

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
441 F.2d 560 (5th Cir. 1971)....................20

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................3

*Frydman v. Diamond*,
No. 1:14-cv-8741, 2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015) ....................7, 15

*Gen. Star Indem. Co. v. Vesta Fire Ins.*,
173 F.3d 946 (5th Cir. 1999)....................18

*Grigson v. Creative Artists Agency, L.L.C.*,
210 F.3d 524 (5th Cir. 2000) .......... passim

*Hendricks v. UBS Fin. Servs., Inc.*,
546 F. App'x 514 (5th Cir. 2013) .......... 5, 6

*ITT Educ. Servs., Inc. v. Arce*,
533 F.3d 342 (5th Cir. 2008) .......... 19

*King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.)*,
707 F.3d 917 (8th Cir. 2013) .......... 22

*Kubala v. Supreme Prod. Servs., Inc.*,
830 F.3d 199 (5th Cir. 2016) .......... passim

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
449 F. App'x 704 (10th Cir. 2011) .......... 22

*McCaskey v. Cont'l Airlines, Inc.*,
133 F. Supp. 2d 514 (S.D. Tex. 2001) .......... 18

*Microsoft Mobile, Inc. v. LG Chem Am., Inc. (In re Lithium Ion Batteries Antitrust Litig.)*,
No. 15-cv-3443, 2016 WL 5791357 (N.D. Cal. Oct. 4, 2016) .......... 7, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 4, 14, 16

*New York v. Oneida Indian Nation of N.Y.*,
90 F.3d 58 (2d Cir. 1996) .......... 7, 14

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) .......... 6

*Palmer Ventures LLC v. Deutsche Bank AG*,
254 F. App'x 426 (5th Cir. 2007) .......... 22, 24, 25

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
139 F.3d 1061 (5th Cir. 1998) .......... 14

*Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*,
687 F.3d 671 (5th Cir. 2012) .......... passim

*Price Pls. v. Humana Ins. (In re Humana Inc. Managed Care Litig.)*,
285 F.3d 971 (11th Cir. 2002) .......... 24

*QPro Inc. v. RTD Quality Servs. USA, Inc.*,
761 F. Supp. 2d 492 (S.D. Tex. 2011) .......... 26

*Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*,
816 F. Supp. 213 (S.D.N.Y. 1993) .......... 15, 17

*Singleton v. Haywood Elec. Membership Corp.*,
588 S.E.2d 871 (N.C. 2003) .......... 13

*Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*,
No. 08-cvs-9450, 2009 WL 406688 (N.C. Super. Ct. Feb. 18, 2009) .......... 25

*TRC Environmental Corp. v. LVI Facility Services, Inc.*,
612 F. App'x 759 (5th Cir. 2015) .......... 11

*Will-Drill Res., Inc. v. Samson Res. Co.*,
352 F.3d 211 (5th Cir. 2003) .......... 10

**STATUTE**

15 U.S.C. § 26 .......... 19

## INTRODUCTION

When parties adopt the AAA rules in their arbitration clause, they clearly and unmistakably delegate all questions of arbitrability to the arbitrator—as this Court held in *Petrofac*, and as every other Circuit to have considered the issue likewise has held. Nevertheless, Archer claims that arbitration clauses with carve-outs or limitations are not subject to *Petrofac*. As Archer would have it, whenever an arbitration clause has a carve-out or limitation, the district court may override the parties' clear and unmistakable delegation to the arbitrator and assess whether the dispute falls within or outside of the exception or limitation—the very determination of arbitrability that the parties delegated to the arbitrator. This circular "exception" would swallow the *Petrofac* rule entirely and has no support in the law.

As this Court has held, the only exception to an otherwise valid delegation clause is when the claim of arbitrability is "wholly groundless." But Archer urges a broad "wholly groundless" standard that this Court prohibits because—as this Court already has held—it would turn the exception into a license for the district court to prejudge arbitrability in the face of a valid delegation clause. That is precisely what occurred below. The district court should have enforced the parties' delegation clause rather than deciding arbitrability itself. That should end this Court's analysis.

But even had the district court properly reached arbitrability, its interpretation was contrary to the plain language of the arbitration clause, and it overrode the well-established presumption in favor of arbitrability. The correct reading—that a party may bring an "action seeking injunctive relief" in court at any time, but that damages claims must be arbitrated—effectuates the parties' broad arbitration clause, while giving the phrase "actions seeking injunctive relief" its intended reach. In contrast, Archer's proposed reading would use this narrow carve-out provision to negate the meaning and effect of an otherwise broad arbitration clause.

Finally, Archer's equitable estoppel arguments ignore not just the law, but the substance of its own Complaint. Archer cannot avoid that its Complaint explicitly relies on the Dealer Agreement containing the arbitration clause. And the clear import of its allegations is that all Appellants—signatory and non-signatory alike—allegedly engaged in interdependent and concerted misconduct within the meaning of equitable estoppel case law.

The district court erred by deciding arbitrability itself rather than delegating it to the arbitrator. It further erred by misconstruing the arbitration clause to hold that Archer's damages claims should be tried to a jury. Appellants respectfully submit that the district court's order should be reversed, and Archer should be compelled to arbitration with all Appellants.

# ARGUMENT

## I. The District Court Should Be Reversed Because It Failed To Follow the Parties' Clear and Unmistakable Delegation of Arbitrability to the Arbitrator.

### A. The Parties Delegated to the Arbitrator Whether This Dispute Fits the Carve-Out for "Actions Seeking Injunctive Relief."

The central dispute here is not ***whether*** Archer's claims are arbitrable, but rather ***who*** decides arbitrability. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). In Archer's view (which the district court erroneously followed),[1] the court first should decide whether a dispute falls within the exception for "actions seeking injunctive relief"; only then would the dispute be sent to an arbitrator to determine whether the dispute is arbitrable. *See, e.g.*, Br. of Appellee ("Br.") 17–26. This circular argument creates an exception to the delegation case law that does not exist: When the parties delegate arbitrability to the arbitrator, they delegate the power to define the scope of any carve-outs or limitations to the arbitration clause.

[1] Archer does not contest that the Court reviews this issue *de novo*, without deference to the district court's conclusions. *See* Br. of Appellant ("App. Br.") 14–15.

The premise underlying every delegation case—including *Petrofac* and *Kubala*—is that all arbitration clauses have some limits, and that the parties intend that the arbitrator—not the court—should define those limits. So there is no logical basis, as Archer urges, to distinguish between limits that stem from language cabining the scope of the clause or, as here, an exception expressed in a parenthetical. *See, e.g.*, Br. 23–24 (distinguishing *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704 (E.D. La. Jan. 12, 2009), on this basis). Cases like *Petrofac* and *Kubala* do not create such a distinction. To the contrary, Fifth Circuit case law provides that when the parties delegate arbitrability, "the motion to compel arbitration should be granted in almost all cases"—the only "narrow exception" being the "exceptional" case in which arguments in favor of arbitration are "wholly groundless." *Kubala*, 830 F.3d at 202 & n.1; *see infra* Section I.B.

The arbitration clause's plain language also does not permit Archer's proposed distinction. The parties' broad arbitration clause renders "[a]ny dispute arising under or related to this Agreement" arbitrable, with the exception of "actions seeking injunctive relief" and certain intellectual property disputes, ROA.504; ROA.510; ROA.522. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 5 (1983) (clause rendering arbitrable "'[a]ll claims, disputes and other matters in question arising out of, or

relating to, this Contract'" was "broad arbitration clause" (citation omitted)). A dispute about arbitrability is not an "action seeking injunctive relief" or a "dispute related to" intellectual property. The question of "who decides" is therefore a "dispute arising under or related to this Agreement," to which the AAA rules apply. The arbitrator must answer this question by virtue of the parties' incorporation of the AAA rules, notwithstanding a carve-out of certain substantive claims.[2]

Numerous courts evaluating arbitration clauses with both a delegation clause and carve-outs or exclusions have held that the arbitrator must decide the scope and applicability of the carve-out. *See* App. Br. 17–22 (collecting cases). That includes this Court, in *Crawford* and *Hendricks*, where the Fifth Circuit held that when there is a delegation clause, the arbitrator decides the scope of the carve-out provision, not the court. *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014); *Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 519–21 (5th Cir. 2013) (per curiam).[3] As the Ninth Circuit admonished, "when a tribunal decides that a

---

[2] As a result, Archer's assertion that "the arbitration clause expressly *excludes* application of the AAA rules to 'actions seeking injunctive relief' like Archer's lawsuit," Br. 2, or that "the Dealer Agreement's arbitration clause expressly provides that the AAA rules apply '*except for* actions seeking injunctive relief,'" *id.* at 11–12, also cannot be squared with the language of the clause.

[3] Archer's attempts to distinguish *Crawford* and *Hendricks* fall flat. *See* Br. 21–23. Archer's distinguishes *Crawford* by noting that the clause there

claim falls within the scope of a carve-out provision, it necessarily decides arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013).[4]

This is true whether the parties expressly delegated arbitrability or did so by adopting the AAA (or similar) rules. Yet, Archer claims there is a difference between the two—asserting, for example, that *Kubala* does not control because *Kubala* concerned an express delegation clause, whereas "[t]here is *no such clause* in the Dealer Agreement." Br. 18. Here again, however, Archer's argument contradicts Fifth Circuit case law, which holds that when parties incorporate the AAA rules, they clearly and unmistakably indicate their intent to delegate arbitrability, just as if they had expressly

---

permitted injunctive relief to be heard by a court in a separate sentence rather than in a parenthetical. Delegation case law makes no such distinction. Archer similarly claims *Hendricks* is different because of how the various clauses were ordered, without explaining why that matters. In fact, Archer's description of *Hendricks*'s holding exactly describes this case: "The Court rejected the argument because the plaintiffs did not confine the relief on their compensation claim to an injunction, and left the decision on the scope of arbitration to the arbitrators." *Id.* at 22–23 (citing *Hendricks*, 546 F. App'x at 520–21).

[4] Archer's criticism of *Oracle* mischaracterizes that case by claiming it held that the UNCITRAL rules delegate arbitrability to the arbitrator "notably without citing any authority." Br. 26. In fact, the Ninth Circuit there relied on case law from the Second and District of Columbia Circuits that was directly on point, as well as analogous case law regarding incorporation of the AAA rules, including *Petrofac*. *Oracle Am.*, 724 F.3d at 1072–74.

done so. *See, e.g.*, *Petrofac*, 687 F.3d at 675 ("[T]he express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (incorporation of JAMS rules clearly and unmistakably delegates arbitrability).

The case on which both the district court and Archer relied, *Frydman v. Diamond*, No. 1:14-cv-8741, 2015 WL 5294790 (S.D.N.Y. Sept. 10, 2015), is not to the contrary, *see* ROA.675; Br. 33–36. The arbitration clause in *Frydman* did not contain a delegation clause; rather, unlike here, the parties empowered the court, rather than the arbitrator, to decide arbitrability. 2015 WL 5294790, at *2. Thus, the district court there adhered to the parties' intent by addressing the scope of the arbitration provision containing a carve-out. Here, however, because the parties delegated arbitrability to the arbitrator, the district court never should have reached the substantive arbitrability decision. *See Microsoft Mobile, Inc. v. LG Chem Am., Inc. (In re Lithium Ion Batteries Antitrust Litig.)*, No. 15-cv-3443, 2016 WL 5791357, at *5 (N.D. Cal. Oct. 4, 2016) (distinguishing *Frydman* because it "did not involve a finding that the parties committed questions of arbitrability to an arbitrator").[5] For the same reason, *New York v. Oneida Indian Nation of N.Y.*, 90

[5] Archer's primary basis for distinguishing *Microsoft* and similar cases that interpret arbitration clauses containing carve-outs, *see* App. Br. 17–22, is to claim those cases are somehow different because they involved clauses

F.3d 58 (2d Cir. 1996), which also did not involve a delegation clause, is similarly inapposite.

### B. Archer Has Not Satisfied the "Wholly Groundless" Standard.

Given that Archer's asserted exception to the delegation rule in *Petrofac*, *Kubala*, and cases like them does not exist, the only actual exception is for cases where the proposed delegation would be "wholly groundless." *Douglas v. Regions Bank*, 757 F.3d 460, 463–64 (5th Cir. 2014); *Kubala*, 830 F.3d at 202 n.1. According to Archer, a court can only delegate arbitrability when there are "plausible arguments that the dispute is covered by the arbitration agreement as well as plausible arguments that it is not." Br. 27. That is not the rule in this Circuit.

The "wholly groundless" exception recognized by this Court is reserved for "exceptional cases," *Kubala*, 830 F.3d at 202 n.1, in which there is no "legitimate argument" in favor of arbitration because the claim at issue has "nothing to do with" the contract containing the arbitration clause, *Douglas*, 757 F.3d at 463–64 (internal quotation marks omitted). This case does not fit that exception because, as Archer admits in its Complaint, Archer

---

that expressly delegated arbitration rather than through incorporation of the AAA rules, *see* Br. 24–25. As explained above, however, this is a distinction without a difference: Express delegation and delegation by incorporation of arbitration rules have the same legal effect.

premises its injury on the existence of the very contract that includes the arbitration clause. *See, e.g.*, ROA.16–17, 22–23 (Compl. ¶¶ 1, 23). Archer's formulation of this narrow exception—which has the district court weigh the plausibility of the competing arbitrability arguments at the outset—would swallow the delegation rule in precisely the way *Kubala* prohibits, by creating a "license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause." *Kubala*, 830 F.3d at 202 n.1.

But even under Archer's formulation, the argument in favor of arbitration here could not possibly be "wholly groundless." This is amply demonstrated by Archer's own critique of the magistrate judge's opinion below—including a table purporting to outline the magistrate judge's supposed additions to the contract language. *See* Br. 27–29. The magistrate judge was not indicating that any particular interpretation necessarily was correct. Rather, he correctly found that there were numerous legitimate and plausible arguments in favor of arbitration and, further, that it certainly cannot be said that this dispute has nothing to do with the Dealer Agreements containing the arbitration clauses. Under the correct formulation of the test—and even under Archer's improperly expansive version—the "wholly groundless" exception does not apply.

### C. Archer Mischaracterizes Fifth Circuit Precedent To Create a Dispute That Does Not Exist.

The inquiry outlined above—delegation under *Petrofac* plus the "wholly groundless" exception under *Douglas* and *Kubala*—should end the analysis, as it demonstrates that the decision of the district court should be reversed and arbitration compelled. But Archer attempts to invent an additional threshold issue, claiming that "[t]here is no valid agreement to arbitrate between Archer and Pelton & Crane." Br. 11. According to Archer, the first step in the arbitration analysis—"whether there is a valid agreement to arbitrate between the parties," *id.* at 13—also permitted the district court to decide whether the parties' dispute falls within the carve-out for "actions seeking injunctive relief," *id.* at 13–17. That has no support in this Circuit's precedents.

Instead, the first step looks solely at "contract formation—whether the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 201; *id.* at 202 ("[T]he only issue at the first step is whether there is any agreement to arbitrate any set of claims."); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (courts must resolve step one only when "a party attacks the very existence of an agreement"). When, as here, a district court concludes "that the question at the first step of the analysis is whether there is an agreement to arbitrate *the claim currently before the court*," it commits error by "engaging in close contract interpretation at the

first step, which focuses only on contract formation." *Kubala*, 830 F.3d at 202.

The unpublished case on which Archer relies, *TRC Environmental Corp. v. LVI Facility Services, Inc.*, 612 F. App'x 759 (5th Cir. 2015) (per curiam), fits squarely within this analytic framework (notwithstanding Archer's curious suggestion that *Kubala* may have improperly overruled *TRC Environmental*, *see* Br. 16 n.11). *TRC Environmental* involved a dispute between a contractor and a subcontractor that could have been governed by two different contracts: the subcontract itself or the prime contract. 612 F. App'x at 761. The Court held that the dispute fell under the prime contract, which did not require arbitration, rather than the subcontract, which did. *Id.* Thus, because there was no contract at all to arbitrate the dispute between the parties, "the parties have not agreed to arbitrate." *Id.* In other words, *TRC Environmental* engaged in precisely the step-one analysis *Kubala* requires: whether there was "*any arbitration agreement at all.*" *Kubala*, 830 F.3d at 201.

That analysis does not apply here, where Archer does not dispute the existence of a contract containing the operative "agreement to arbitrate any set of claims." *See* App. Br. 15 n.4. In fact, that same contract is the basis for Archer's antitrust claims. *See, e.g.*, ROA.22–23 (Compl. ¶ 23) ("Archer Dental's authorized distribution territory in its dealer agreements with [the

Manufacturer Appellants] allowed it to sell equipment in Texas and parts of Oklahoma and Northwest Arkansas."); ROA.16–17 (Compl. ¶ 1) (the Manufacturer Appellants "prohibited Archer Dental from selling dental equipment in areas and to customers which the distribution agreements between Archer Dental and [the Manufacturer Appellants] permitted Archer Dental to sell . . . ."). Archer's attempt to collapse the first step regarding contract formation into the second step regarding contract scope fails.

* * * * * * * *

The threshold issue before the Court is not ***whether*** these claims should go to arbitration but rather ***who*** should decide whether they go to arbitration. The law is clear: When the parties delegate arbitrability to the arbitrator, "the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202. The district court should have done so in this case, and its decision denying the Appellants' motions to compel arbitration should be reversed.

## II. The Plain Language of the Arbitration Clause Requires Arbitration.

The district court never should have reached the question of the arbitrability of Archer's claims. But even if it had properly reached that question, Archer's expansive reading of the carve-out provision for "actions seeking injunctive relief" does not comport with the plain language chosen by the parties. And it results in the absurd consequence of permitting a party to

unilaterally avoid a broad arbitration clause any time it likes, simply by appending a claim for injunctive relief, no matter how perfunctory it is or how little a party does to advance that claim over a period of many years.

### A. Appellants' Reading of the Arbitration Clause Preserves the Vitality of Both the Clause Itself and Its Exceptions.

The correct reading of this arbitration clause is that the parties may come to court seeking injunctive relief at any time before, during, and after the arbitration, but still must arbitrate any claim for damages. Under this reading, a party could seek injunctive relief before arbitration by seeking preliminary injunctive relief to preserve the status quo (something Archer has failed to do in the more than eight years since the underlying events occurred). It could do so during arbitration to prevent a party from taking action that upsets the status quo while the arbitration proceeded. And it could do so after the arbitration concluded by seeking permanent injunctive relief to effectuate whatever award that party was able to obtain.

These are the "actions seeking injunctive relief" that the parties carved out, not the unmitigated right to rob the arbitration clause of any meaning. This interpretation, therefore, complies with North Carolina's requirement that contract terms "are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Singleton v. Haywood Elec. Membership Corp.*, 588 S.E.2d 871, 875 (N.C. 2003) (internal quotation

marks omitted). It does so by giving both the broad arbitration clause and the carve-out provisions their appropriate effect.

Archer invites error when it asserts that "[e]xpressed intent not to arbitrate certain disputes (as here) overrides the presumption of arbitrability." Br. 30 (section heading). Notably, in the section that follows this heading, Archer provides no support for this attempt to undermine the long-standing presumption in favor of arbitrability. This includes Archer's discussion of *Oneida Indian Nation*, where the Second Circuit made clear that although "exclusionary clauses should not be given expansive readings, here the language excluding a certain class of disputes from arbitration was clear and unambiguous." 90 F.3d at 62. As the magistrate judge held, "that standard [in *Oneida Indian Nation*] has not been met here," where the carve-out provision is subject to a reasonable reading in favor of arbitration. ROA.441. The presumption in favor of arbitrability is alive and well: Because doubts must be resolved in favor of arbitration, *Moses H. Cone*, 460 U.S. at 24–25; *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998), a plausible reading is all that is required, *see AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).[6]

[6] As noted above, this also means that the magistrate judge's delegation decision cannot be "wholly groundless."

Nor does *Frydman* support Archer's arguments. In *Frydman*, the district court confronted two separate agreements: a 2005 settlement agreement containing an arbitration provision and a 2012 settlement agreement that amended the terms of the 2005 agreement. Those amendments included the following dispute resolution provision: "Should any dispute arise between the Parties which gives rise to injunctive or equitable relief . . . the party initiating an action seeking injunctive or equitable relief may at his/her/its election bring such action in a court of competent jurisdiction." 2015 WL 5294790, at *2. Thus, *Frydman* resolved a conflict between two different agreements, the second of which broadly allowed an "action" in court to resolve "***any dispute*** . . . between the Parties ***which gives rise to injunctive or equitable relief***." *Id.* at *7–8 (emphasis added). This language allowing "any dispute . . . which gives rise to injunctive relief" to be heard in court reaches far more broadly than the clause here requiring that "***any dispute***" must be arbitrated, except for an "action seeking injunctive relief."

Thus, *Frydman* dealt with broader contract language than is at issue here, which that district court described as "particular (and arguably peculiar)." *Id.* at *2. In contrast, the contract here fits within the weight of settled case law holding that, when the parties have agreed to arbitrate damages claims, those claims must be sent to arbitration. *See, e.g.*, *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213, 217–18

(S.D.N.Y. 1993) (rejecting an interpretation of a similar arbitration clause that would transform "arbitrable claims into nonarbitrable ones depending on the form of relief prayed for"); *see also Moses H. Cone*, 460 U.S. at 20 ("[R]elevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.").

### B. Archer's Reading of the Arbitration Clause Deprives It of Meaning.

Archer claims that the phrase "actions seeking injunctive relief" encompasses any suit of any breadth or scope, provided it simply alleges entitlement to injunctive relief. The overreach inherent in this argument is demonstrated by the lengths to which Archer takes it, claiming that any "action that includes a claim for injunctive relief which is plausible on its face thus triggers the exclusion" and that any "other claims in the action, including claims for money damages" are "irrelevant." Br. 15; *see also id.* at 35 n.24 ("Archer's request for permanent injunctive relief is alone sufficient to render this an 'action seeking injunctive relief.'").

This reading nullifies the entire arbitration clause. The parties chose a broad arbitration clause that by its terms reaches the entire universe of disputes other than injunctive and certain intellectual property disputes. Archer's reading turns that intent on its head, allowing one party unilaterally to eviscerate the clause's broad reach simply by inserting a couple of sentences praying for injunctive relief. *See Grigson v. Creative Artists Agency,*

*L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (party cannot avoid arbitration by recasting claims to avoid terms of agreement); *Remy Amerique*, 816 F. Supp. at 217–18 (rejecting interpretation that "would, solely on the basis of the form of relief sought, significantly narrow the broad provision for arbitration").

The weight that Archer places on a single word—"action"—further demonstrates how little vitality Archer gives the arbitration clause. Archer argues that this one word necessarily causes this entire case—including Archer's predominant claim for "tens of millions" of dollars in damages, ROA.16–17—to be heard by a jury, with all the attendant costs of discovery, motions practice, and trial.

But that one word cannot bear the weight Archer places on it. This is not an "action seeking injunctive relief." It is an "action seeking damages and injunctive relief." In fact, when it lets its guard down, that is precisely how Archer itself describes the case, including in its Brief, where it describes this as a "***suit seeking damages and injunctive relief***." Br. 4 (emphasis added); *see also* ROA.199 (Archer's Opp'n to Mot. To Compel Arbitration) ("Archer Dental has filed ***this action for injunctive relief and damages*** . . . ." (emphasis added)). In fact, by using the word "actions" in conjunction with "injunctive relief" (and nothing else), the parties underscored that an arbitrator must hear damages claims. Because an "action, unlike a

claim, encompasses ***all the parties and claims*** presently and properly before this Court," only "actions seeking injunctive relief" (and nothing else) appropriately can go to a court. *See McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 526 (S.D. Tex. 2001) (emphasis added).

Thus, the magistrate judge did not, as Archer contends, "reinterpret" or "rewrite" the arbitration clause. *See* Br. 28–29. It is Archer that does so now.

### C. The Lack of Merit to Archer's Injunctive Relief Claim Underscores the Implausibility of Its Reading of the Arbitration Clause.

Archer spills much ink defending the merits of its injunctive relief claim. But the issue here is not whether Archer's injunctive relief claim fails on the merits[7]—Appellants' interpretation would apply equally to a robust injunctive relief claim. The point, instead, is that the hollowness of Archer's injunctive relief claim underscores how easily Archer's interpretation renders the arbitration clause meaningless. The magistrate judge recognized this, noting that the "predominant relief" Archer's Complaint sought was damages in the "tens of millions of dollars." ROA.440–441.

---

[7] Tellingly, however, Archer argues the merits of its injunctive relief claim by relying on the notice pleading standard that *Twombly* and *Iqbal* superseded long ago. *See* Br. 37 (citing *Gen. Star Indem. Co. v. Vesta Fire Ins.*, 173 F.3d 946, 950 (5th Cir. 1999)).

It is not enough for Archer to connect its repeated invocation of the word "continuing," Br. 4–6, to the policy bases for antitrust injunctions, *id.* at 39.[8] Antitrust injunctive relief claims are subject to the same four-part test as any other injunctive relief claim. This is plain on the face of the statute itself. 15 U.S.C. § 26 (antitrust injunction claims subject to "the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings"). Thus, for Archer's injunctive claim to have teeth, it must be supported by facts satisfying the normal standard for injunctions.

But Archer never explains—in its Complaint, in its six briefs on the issue below, or its Brief here—how these "continuing" injuries are irreparable, how its remedies at law are inadequate, how the balance of hardships would favor an injunction, or why an injunction would be in the public interest. *See ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008). Repeated, italicized use of the word "continuing" does not create a real injunctive relief claim. Rather, it reveals Archer's effort to eviscerate the parties' broad arbitration clause through a claim that has no substance. *See Microsoft Mobile*,

[8] Archer also claims, without any explanation, that it somehow matters that "Archer's prayer for relief thus pleads for preliminary and permanent injunctive relief *before* pleading for damages." Br. 6. The order in which Archer chose to list the elements of its prayer for relief does not enter into this analysis at all.

2016 WL 5791357, at *5 (refusing to apply a carve-out for injunctive relief in part because "the gravamen of the complaint is not for injunctive relief, but rather for damages").

In any event, as even Archer must concede, there is no credible argument that any purported injuries to Archer from the Appellants' alleged conduct are "continuing." Archer does not dispute that the relationship between the Manufacturer Appellants and Archer ended in 2014. *See* App. Br. 31. And Archer does not dispute that it has not done a single thing to advance its injunctive relief claim in the more than eight years since the wrongful conduct allegedly occurred. *Cf. Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561–62 (5th Cir. 1971) (per curiam) (affirming denial of preliminary injunction when plaintiff had "acquiesced for the last five years in the acts" of defendant).

Instead, Archer blames its own inaction on everyone from the magistrate judge, for entering a stay, to the district court, for allegedly not "expeditiously" managing its docket. *See* Br. 9 & n.9; *id.* at 35 n.24. This is Archer's case; if its alleged harm was "irreparable" and not compensable by the money damages that otherwise predominate its Complaint, it could have and should have expeditiously moved the district court to lift the stay to obtain a ruling or some form of preliminary relief. Instead, it did nothing.

* * * * * * * *

The district court permitted Archer to deprive the parties' broad arbitration clause of any meaning. Even if the district court had the power to decide arbitrability, the plain meaning of that clause, and the presumption in favor of arbitrability, should have led it to compel arbitration.

## III. The Court Should Equitably Estop Archer from Denying Arbitration with the Non-Signatory Appellants.

Archer agrees that this Court can resolve the equitable estoppel issue without necessity of remand to the district court. Br. 40 n.29.[9] Appellants' opening brief demonstrated that both prongs of the Fifth Circuit and North Carolina/Fourth Circuit equitable estoppel test (which are identical, App. Br. 34 n.8) apply to Archer's claims. Archer's arguments rely on inapplicable equitable estoppel law from other Circuits, and do not undermine this conclusion. All Appellants—signatory and non-signatory alike—should be compelled to arbitration.

[9] Although Archer also does not dispute that the abuse of discretion standard applies to the Court's review of the magistrate judge's equitable estoppel ruling, it never grapples with the import of that standard. The Court should only find that the magistrate judge abused his discretion if his decision was "premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 360 (5th Cir. 2003) (internal quotation marks omitted). Archer's Brief demonstrates neither.

### A. Archer's Claims Make Reference to and Presume the Existence of the Dealer Agreements.

Under the first *Grigson* test, a signatory will be equitably estopped from denying arbitration with a non-signatory when the signatory's claim relies on the contract containing the arbitration clause. *Grigson*, 210 F.3d at 526. Relying on out-of-circuit case law, Archer claims this standard could be met only if Archer had alleged that "Appellants breached any obligations or duties under the Dealer Agreement." Br. 42–45 (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011); *King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.*), 707 F.3d 917, 924 (8th Cir. 2013)).

That is not the standard in the Fifth Circuit or North Carolina, where the test requires only that the signatory's claim "make[] reference to or presume[] the existence of the written agreement." *Grigson*, 210 F.3d at 527 (internal quotation marks omitted); *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431 (5th Cir. 2007) (per curiam) (same); *Brantley v. Republic Mortg. Ins.*, 424 F.3d 392, 396 (4th Cir. 2005) (it is enough for the signatory's claims to presume existence of agreement); *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (quoting *Brantley* for the same test). Under any reasonable interpretation, Archer's claims "make reference to" and "presume the existence of" the Dealer Agreements containing the arbitration clause. Nothing in this Court's precedent supports Archer's

notion that only claims alleging a breach of a contract or contract-based duty can be arbitrated by compulsion of a non-signatory, and such a holding would effectively abrogate the *Grigson* test.

Moreover, Archer's contention that its claims "exist 'wholly separate' from the Dealer Agreement," Br. 44, contradict its own Brief and Complaint. Archer admits that the Dealer Agreements "established Archer as a distributor of Pelton & Crane products." Br. 7. And contrary to Archer's assertion that the Dealer Agreements are nothing more than "factually significant" to this case, the Complaint relies on those agreements, alleging that Appellants "prohibited Archer Dental from selling dental equipment in areas and to customers ***which the distribution agreements between Archer Dental and [the Manufacturer Appellants] permitted Archer Dental to sell*** . . . ." ROA.16–17 (Compl. ¶ 1) (emphasis added).

Archer's Brief effectively concedes that the Dealer Agreement is the core and underlying impetus of Archer's antitrust claim—both as to liability and damages. Archer does not dispute the alleged boycott involving non-signatories Schein and Burkhart and signatory Pelton & Crane directly resulted from—and allegedly was designed to curtail—Archer's supposed success selling under the Dealer Agreement. Br. 40–49. Archer also does not dispute that the injury for which it seeks damages consists of lost sales that Archer claims it would have made under the Dealer Agreement. *Id.* And the

injunctive relief claim on which Archer hangs its entire arbitration argument seeks to restore Archer to the rights provided by these very Dealer Agreements. *Id.*

### B. Archer Alleges Interdependent and Concerted Misconduct by All Appellants.

The second *Grigson* test permits equitable estoppel when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 210 F.3d at 527 (emphasis and internal quotation marks omitted). Again relying on out-of-circuit case law, Archer claims this requires "[a]ctual dependence on the underlying contract in making out claims against the nonsignatory defendants." Br. 47 (citing *Price Pls. v. Humana Ins. (In re Humana Inc. Managed Care Litig.)*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003)). But this would collapse the two *Grigson* tests into one, notwithstanding that this Court and the Fourth Circuit have been clear that the tests are separate and independent. *See, e.g.*, *Palmer*, 254 F. App'x at 429 ("*Grigson* set forth two separate tests under which equitable estoppel may be used by a non-signatory to compel arbitration."); *Brantley*, 424 F.3d at 395–96 ("Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances." (internal quotation marks omitted)).

Archer's citation of *Bridas* for the proposition that an "'expanded version of equitable estoppel would threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement,'" Br. 46–47 (quoting *Bridas*, 345 F.3d at 361), cannot be squared with the holding of that case. *Bridas* concerned the converse of the situation here: a signatory attempting to use equitable estoppel to compel a non-signatory to arbitration. 345 F.3d at 360–61. As to such cases, the "*Bridas* standard is a different and stricter standard than that used when a non-signatory seeks to compel a signatory to arbitrate." *Palmer*, 254 F. App'x at 430. But as to the situation here—a non-signatory compelling arbitration with a signatory—*Bridas* reaffirmed that "the result in *Grigson* and similar cases makes sense." *Bridas*, 345 F.3d at 361.[10]

Nor can Archer's characterization of its own Complaint be reconciled with the document itself. Archer claims the "interdependent and concerted misconduct" test cannot apply to it because "Archer seeks to hold each Appellant liable for its *separate* role in the antitrust conspiracy." Br. 48. But

[10] Archer also cites the North Carolina intermediate appellate court's unpublished opinion in *Speedway Motorsports* in support of its proposed equitable estoppel standard. *See* Br. 46–47 (citing *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*, No. 08-cvs-9450, 2009 WL 406688, at *6 (N.C. Super. Ct. Feb. 18, 2009)). But *Speedway Motorsports* cited *dicta* in an Eleventh Circuit case on equitable estoppel in support of its ruling on the reach of a forum selection clause. 2009 WL 406688, at *6. The case had nothing to do with arbitration.

the Complaint does not allege any "separate roles" of the Appellants[11] that purportedly caused Archer injury. To the contrary, the Complaint goes to great lengths to proclaim all Appellants liable for their alleged collective action against Archer, as part of a purported single conspiracy, including by requesting "money damages from Defendants *jointly and severally* for these violations." ROA.34 (Compl. ¶ 60) (emphasis added); ROA.37 (Compl. at 22) (seeking judgment "[a]gainst all Defendants, jointly and severally").

* * * * * * * *

Archer's Complaint satisfies both of the separate and independent *Grigson* tests. In such situations, equitable estoppel is "much more readily applicable." *Grigson*, 210 F.3d at 527–28. The Court should direct the district court to compel arbitration as to all Appellants.[12]

---

[11] The Complaint alleges no facts at all with respect to Manufacturer Appellants Kavo Dental Technologies, LLC and Dental Imaging Technologies Corp.

[12] Archer argues that the Court, and not the arbitrator, must decide whether arbitration should be compelled with the non-signatories. Br. 21 n.13. This is precisely what Appellants are requesting: the Court to decide equitable estoppel, and then delegate the question of arbitrability as to all of the parties pursuant to that decision. In any event, Archer's cases are inapposite. For example, in *Celanese*, the non-signatory "expressly excluded themself as a party to the arbitration clause," *Celanese Corp. v. BOC Grp. PLC*, No. 3:06-cv-1462, 2006 WL 3513633, at *3 (N.D. Tex. Dec. 6, 2006), something not true of any of the non-signatories here. In *QPro*, the signatory plaintiff did not allege any wrongdoing by its co-signatory to the arbitration agreement that would have permitted a non-signatory to compel the plaintiff to arbitrate. *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F.

## CONCLUSION

The judgment of the district court should be reversed, and the district court should be directed to enter an order compelling arbitration of all claims as to all parties and staying further court proceedings.

Supp. 2d 492, 503 (S.D. Tex. 2011). That is not true here, where Archer alleges concerted and interdependent misconduct by all of the signatory and non-signatory Appellants.

Respectfully submitted,


*/s/ Jonathan B. Pitt*

JONATHAN B. PITT
LIAM J. MONTGOMERY
WILLIAMS & CONNOLLY LLP
*725 Twelfth Street, N.W.*
*Washington, DC 20005*
*(202) 434-5000*

LAYNE E. KRUSE
NORTON ROSE FULBRIGHT US LLP
*1301 McKinney, Suite 5100*
*Houston, Texas 77010*
*(713) 651-5151*

BRETT C. GOVETT
NORTON ROSE FULBRIGHT US LLP
*2200 Ross Avenue, Suite 3600*
*Dallas, Texas 75201*
*(214) 855-8118*

*Attorneys for Appellants Danaher Corporation, Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

*/s/ Paul F. Schuster*

PAUL F. SCHUSTER
CYNTHIA KEELY TIMMS
LOCKE LORD LLP
*2200 Ross Avenue, Suite 2800*
*Dallas, Texas 75201*
*(214) 740-8000*

CHRISTOPHER ONDECK
ADRIAN FONTECILLA
STEPHEN CHUK
PROSKAUER ROSE LLP
*1001 Pennsylvania Avenue, N.W.*
*Washington, DC 20004*
*(202) 416-5865*

*Attorneys for Appellant Henry Schein, Inc.*


April 21, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel of record by using the Court's ECF system on April 21, 2017.

Kay Lynn Brumbaugh
Andrews Kurth Kenyon LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Tel: (214) 659-4400
Fax: (214) 659-4401
kaylynnbrumbaugh@andrewskurth.com

Cameron Phair Pope
Andrews Kurth Kenyon LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: (713) 220-4142
Fax: (713) 220-4285
cameronpope@andrewskurth.com

*/s/ Liam J. Montgomery*
LIAM J. MONTGOMERY

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 6,275 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Expanded BT font.

*/s/ Liam J. Montgomery*
LIAM J. MONTGOMERY

*Counsel for Appellants Danaher Corp., Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

April 21, 2017

## CERTIFICATE OF ECF FILING COMPLIANCE

The undersigned hereby certifies that on April 21, 2017, the foregoing was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Pursuant to Fifth Circuit R. 25.2, the undersigned certifies that (1) required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper documents; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*<u>/s/ Liam J. Montgomery</u>*
LIAM J. MONTGOMERY

*Counsel for Appellants Danaher Corp., Instrumentarium Dental Inc., Dental Equipment LLC, Kavo Dental Technologies, LLC, and Dental Imaging Technologies Corp.*

April 21, 2017